UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

————————————————— x

PHIL MCCALLEY, on behalf of himself  :
and all others similarly situated,   :
                                     :   Civil Action No.: 07-2141 (JAG)(MCA)
                                     :
                          Plaintiff, :
                                     :   **ORAL ARGUMENT REQUESTED**
              v.                     :
                                     :
SAMSUNG ELECTRONICS                  :   Motion Date:  November 12, 2007
AMERICA, INC. and SAMSUNG            :
ELECTRONICS CO, LTD.,                :
                                     :
                          Defendants. :

————————————————— x

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

---

**LITE DEPALMA GREENBERG & RIVAS, LLC**
Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ 07102
Tel: (973) 623-3000
Fax: (973) 623-0211

*Attorneys for Plaintiff and the Class*

(Additional Counsel Listed On Signature Page)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND

    A. The Televisions and the Defect............................................................................ 3

    B.  Samsung's Inability or Unwillingness to Correct the Defect.................................... 4

    C. Samsung's "Secret Recall"................................................................................... 5

    D. Plaintiff's Experience with his Defective Television ................................................ 6

ARGUMENT ............................................................................................................... 7

    APPLICABLE LEGAL STANDARDS ....................................................................... 7

POINT I

    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
    PLAINTIFF'S CLAIM ............................................................................................. 8

    A. This Court Has Jurisdiction Over All of Plaintiff's Class Claims – Including
    Those Brought Under the Magnuson-Moss Act – By Virtue of the Expansion
    of Federal Diversity Jurisdiction by the Class Action Fairness Act of 2005 ................. 8

    B. Samsung's Attempt to Refund Plaintiff's Repair Expenditures After the Filing
    of this Suit Does Not Moot Either His or the Class' Claims ......................................... 9

        1. Samsung's Mootness Claim Should be Rejected, as it Raises Contested
        Issues of Material Facts ....................................................................................... 10

        2. Plaintiff's Potential Entitlement to Relief Beyond His Out of Pocket
        Expenses Maintains this Case as a Live Controversy............................................... 11

        3. Samsung Ignores Binding Precedent Holding that a Class Representative
        Cannot Moot the Claims of a  Putative Class ......................................................... 11

POINT II

    PLAINTIFF STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED ...... 12

    A. Plaintiff Has Validly Pleaded the Breach of Contract  Claims of the Class, as
    the Alleged Characteristic, Inherent, and Latent Defect Constituted a Non-Conformity

with Samsung's Express and Implied Warranties Which Were Breached at the Time
of Delivery, Within the Warranty Period......................................................................13

B. Plaintiff has Stated a Claim Under the Consumer Fraud Act for Samsung's
Affirmative Misrepresentations and Knowing Omissions and for its Aggravated
Breach of Warranty............................................................................................................16

  1. Plaintiff States a Claim Under the Act Based on Defendants' Affirmative
  Misrepresentations and Knowing Omissions...........................................................17

  2. Plaintiff States a Claim Under the Act Based on Defendants' Breach
  of Warranty.................................................................................................................19

CONCLUSION.............................................................................................................................23

# TABLE OF AUTHORITIES

**Case(s)**                                                                 **Page(s)**

Barry v. Arrow Pontiac, Inc.,
    100 N.J. 57 (1985) ....................................................................................16

Brothers v. Hewlett-Packard Co.,
    2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ............................................9

Clark v. Wynn's Extended Care,
    2007 WL 922244 (N.D. Ill. March 23, 2007).............................................9

Comm'rs of Fire Dist. No. 9 v. Am. La France,
    176 N.J. Super. 566 (App. Div. 1980) ....................................................14

Cox v. Sears Roebuck & Co.,
    138 N.J. 2 (1194) ......................................................................16, 17, 19

Delgozzo v. Kenny,
    266 N.J. Super. 169 (App. Div. 1993) ....................................................14

Deposit Guar. Nat'l Bank v. Roper,
    445 U.S. 326 (1980)............................................................................10, 12

DiNicola v. Watchung Furniture's County Manor,
    232 N.J. Super. 69 (App. Div.) ...............................................................20

Div. of Consumer Affairs v. G.E. Co.,
    244 N.J. Super. 349 (App. Div. 1990) ....................................................19

Duffy v. Samsung Elecs. Am., Inc.,
    2007 WL 703197 (D.N.J. March 2, 2007) ............................................22

Evancho v. Fisher,
    423 F.3d, 347 (3d. Cir. 2005)....................................................................7

Gennari v. Weichert Co. Realtors,
    148 N.J. 582 (1997) ................................................................................16

Hagans v. Lavine,
    415 U.S. 528 (1973)..................................................................................7

Heavner v. Uniroyal, Inc.,
    63 N.J. 130 (1973) ..................................................................................14

Int'l Ass'n of Machininsts & Aerospace Workers v. Northwest Airlines, Inc.,
    673 F.2d. 700 (3d. Cir. 1981)..........................................................................8, 11

In re Cadillac V8-6-4 Class Action,
    93 N.J. 412 (1983) ....................................................................................14

Kanter v. Barella,
    489 F.3d. 170 (3d. Cir. 2007)......................................................................7

Kehr Packages, Inc., v. Fidelcor, Inc.,
    926 F.2d 1406 (3d. Cir. 1991)......................................................................7

Leon v. Rite Aid Corp.,
    340 N.J. Super. 462 (App. Div. 2001) ......................................................16, 18, 19

Lettenmaier v. Lube Connection, Inc.,
    162 N.J. 134 (1999) ..................................................................................16

McGee v. Cont'l Tire N. Am., Inc.,
    2007 WL 2462624 ....................................................................................9

Perkins v. DaimlerChrysler Corp.,
    383 N.J. Super. 99 (App. Div. 2006) ........................................................22

Perth Amboy Iron Works, Inc. v. American Home Assur. Co.,
    226, N.J. Super. 200 (App. Div. 1988), aff'd, 118 N.J. 249 (1989) .......................20

Roper v. Consurve, Inc.,
    578 F.2d. 1106 (5th Cir. 1978) ..................................................................12

Scheuer v. Rhodes,
    416 U.S. 232 (1974)..................................................................................7

Sosna v. Iowa,
    419 U.S. 393 (1975)..............................................................................12, 13

Strzakowlski v. Gen. Motors Corp.,
    2005 WL 2001912 (D.N.J. Aug. 16, 2005) ................................................ 17, 19-22

Suber v. Chrysler Corp.,
    104 F.3d. 578 (3d Cir. 1997)................................................................... 19-21

Turicentro, S.A. v. American Airlines, Inc.,
    303 F.3d. 293 (3d. Cir. 2002)......................................................................8

Ventura v. Ford Motor Corp.,
    180 N.J. Super. 45 (App. Div. 1981) ..........................................................8

Viking Yacht Co. v. Composites One LLC,
   496, F. Supp. 2d 462 (D.N.J. 2007) ................................................................16, 19

Weiss v. Regal Collections,
   385 F.3d. 337 (3d.Cir. 2004).................................................................10, 12, 13

**Statute(s)/Rule(s)**

15 U.S.C. §2308 ....................................................................................................1

28 U.S.C. §1332(d) ...........................................................................................1, 9

N.J.S.A. §12A:2-725(2) ......................................................................................14

N.J.S.A. 56:8-2 ...................................................................................................16

Rule 12(b)(1) ............................................................................................. passim

U.S. Const. art III, §2 .........................................................................................11

## **INTRODUCTION**

The attempt of Defendants (together, "Samsung") to defeat this case takes two forms. First, Defendants challenge this Court's jurisdiction. Next, they attack the sufficiency of the allegations of the complaint. Defendants are wrong on both counts.

This Court has jurisdiction over all of Plaintiff Phil McCalley's claims. The Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) ("CAFA"), which Defendants have ignored, expanded the original jurisdiction of federal courts to adjudicate class action claims, including Mr. McCalley's claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 ("Magnuson-Moss"). That is so even if the claims otherwise might not have satisfied Magunuson-Moss requirements for federal jurisdiction. Point I-A, *infra*.

Defendants' attempt to moot all of Plaintiff's claims under Rule 12(b)(1) likewise fails. Point I-B, *infra*. First, Mr. McCalley's Declaration submitted herewith evidences that, contrary to Samsung's misleadingly incomplete assertion, Plaintiff did not "voluntarily" accept reimbursement of his repair expenses from Defendants so as to receive a free repair. Rather, seeing a chance to block this case from proceeding, Samsung surreptitiously credited Mr. McCalley's account with the nearly $1,000 he had already paid for that repair. Samsung did that only after this case had been filed. Since Mr. McCalley's Declaration creates serious disputes of material fact, it would be improper to dismiss this case without a plenary trial to resolve the contested jurisdictional issue.

Second, Defendants' tactic did not give even Mr. McCalley, let alone the class, all the relief that Plaintiff seeks. The complaint seeks other damages, as well as injunctive relief. Samsung's continued refusal to provide these other forms of relief, by itself, defeats Defendants' mootness argument and maintains this case as a live controversy.

1

Finally, even if Samsung had "picked off" Mr. McCalley's own claim by belatedly and surreptitiously crediting back only what he paid for repairs, Defendants could not thereby sidestep the claims of the absent class. Binding precedents from the Supreme Court, which Samsung has not addressed, and the Third Circuit, which Defendants misapply, makes that clear.

Samsung's attacks on the sufficiency of the complaint are equally without merit. Mr. McCalley has adequately alleged Samsung's breach of express and implied warranty by pleading facts showing that the televisions Samsung sold him and tens of thousands of other unsuspecting customers were defective at the time of sale. The time of sale or tender of the defective and, therefore, non-conforming televisions is when Samsung's breach occurred. Defendants' narrow focus on the date that the defect first manifested itself on Mr. McCalley's television screen is irrelevant to this legal analysis. Point II-A, *infra*.

Plaintiff has more than adequately pleaded his claims under the New Jersey Consumer Fraud Act as well. The complaint lays out in great detail the affirmative misrepresentations and knowing omissions of Samsung regarding the defective condition of these televisions, even going so far as to identify the defective part (the Light Tunnel), the nature of the problem with that part, and Samsung's awareness of and refusal to face up to that defect. Those allegations, even without a breach of warranty, satisfy the liberal pleading standards for consumer fraud claims. Mr. McCalley has also sufficiently alleged a consumer fraud claim based on Samsung's breach of warranty and aggravating circumstances, such as Defendants' awareness of the defect and the continued sale of the televisions without disclosure of the defect, which have been found sufficient in other cases in this District. Point II-B, *infra*.

Samsung's challenges to the Magnuson-Moss and unjust enrichment claims depend entirely on Defendants' assertion that Mr. McCalley has not adequately alleged his other claims.

Since Plaintiff has in fact sufficiently pleaded all his claims, Plaintiff respectfully requests that the Court deny Samsung's motion in its entirety.

## FACTUAL BACKGROUND

### A.        The Televisions and the Defect

High Definition Television ("HDTV") refers to a method of portraying television images in high resolution, with a high degree of picture detail and accuracy.  Consumers purchasing HDTV televisions pay a significant premium above the cost of standard definition sets for the ability to enjoy the high quality picture that HDTV television sets offer. (Complaint ¶10.) Samsung offers its HL-R and HL-S Series Rear Projection Televisions (the "Televisions") to capitalize on this market. (Complaint ¶11.)

Samsung represented that the Televisions:   (a) were free from defects; (b) provided excellent video quality; (c) were capable of properly rendering a video program with a high degree of precision; (d) provided a clear and color accurate picture; (e) were of a particular standard, namely, that they would properly play HDTV and standard definition programming; and (f) provided high quality video playback. (Complaint ¶¶12, 17, 30.)

Samsung misrepresented and omitted to disclose, however, that the Televisions have a defect contained in a component called the "Light Tunnel."  The defect causes a video anomaly that consumers have come to call "The Shadow" which appears as a linear darkened strip running down the side of the Television's viewing screen (the "Defect"). (Complaint ¶12.)

Plaintiff alleges that The Shadow is caused by an inherent and characteristic manufacturing defect in the Televisions' Light Tunnel.  The Light Tunnel is a component part within the larger "Light Engine," which is the principal video component that causes the video signal to be displayed as a picture on the viewing screen.  The problem is that mirrors in the

Light Tunnel are insufficiently secured to the apparatus, resulting in a partial blockage of the light path. (Complaint ¶13.)

The Defect in the Light Tunnel requires the replacement of the entire Light Engine. The Light Engine is among the most expensive components in the Televisions, costing more than $1,000.00. Mr. McCalley alleges that Samsung knew or should have known of the Defect in the Light Tunnel, and The Shadow which consumers would experience as a result, but omitted to disclose the Defect in connection with Samsung's marketing and sale of the Televisions. (Complaint ¶13.) Indeed, as Samsung's own affidavit on this motion makes clear, when Mr. McCalley called Samsung to report the problem, Samsung's personnel already knew all about it, and asked him whether "the stripe was growing." See Affidavit of Keith J. Weingold, Exhibit A.

As a result of the Defect, consumers have found that (contrary to what Samsung explicitly represented) the Televisions do not display the clear picture for which consumers have paid so dearly. Rather, the Televisions display The Shadow, which renders part of the Television screen a significantly darker shade than the rest of the screen, eliminating the ability to view a program in the affected region of the Television. Simply, The Shadow renders the Televisions unsuitable for their intended purpose. (Complaint ¶12.) Mr. McCalley purchased a television containing the Defect and The Shadow has exhibited itself on his television screen as set forth in more detail below. (Complaint ¶6.)

**B.**     **Samsung's Inability or Unwillingness to Correct the Defect**

Samsung's response (or, rather, its non-response) to the Defect failed to comply with the undertaking in its warranties, as well as state warranty law and the Magnuson-Moss Act. Indeed, despite Samsung's institutional knowledge and awareness of the Defect, Samsung's Customer Service personnel continue to deny to consumers complaining about The Shadow that this

characteristic and inherent Defect in the Light Tunnel even exists.  Once a consumer's one year Samsung written warranty has expired, Samsung disclaims any liability for the Defect, leaving the consumer to bear the cost of this expensive repair on his or her own, or purchase a new replacement television.  (Complaint ¶14.)  Consumers have been forced to spend well over $1,000.00 for replacement Light Engines, and have incurred other expenses in transporting their Televisions – which weigh approximately 125 lbs. – to repair facilities.  (Complaint ¶16.) Further, Samsung has continued to misrepresent to consumers that the Televisions provide excellent video quality and has omitted to disclose to consumers the existence of the Defect.

To date, despite persistent consumer demands, Samsung has been unable or unwilling to offer consumers any permanent fix for the Defect.  Instead, Samsung has offered only to replace the Light Engines with units that also contain (but have not yet manifested) the Defect.  As a result, although the new Light Engines serve as a temporary "band-aid" solution, the underlying Defect remains, and will cause The Shadow to reappear anywhere from several weeks to many months after installation, depending upon usage.  (Complaint ¶15.)

### C.     Samsung's "Secret Recall"

Although the Defect has been recognized internally at Samsung, Defendants have refused to recall the Televisions.  Instead, Samsung has engaged in a selective "secret recall" for certain customers who show signs of refusing to acquiesce in Samsung's wrongdoing.  Samsung offers to pay a -- usually small -- portion of the expense to repair the Defect in Televisions of consumers who threaten to file suit or take other legal action against Samsung, or those who have publicized their experiences on the internet.  (Complaint ¶17.)  Mr. McCalley was one of those persons, as discussed further in the next section.

### D.   Plaintiff's Experience with his Defective Television

On or about August 10, 2005, Mr. McCalley purchased a new Samsung 61 inch HL-R television for $3,528.00.  (Declaration of Phil McCalley in Support of Plaintiff's Opposition to Motion to Dismiss, dated September 21, 2007 ("McCalley Dec.") at ¶2.)  In or about December 2006, Plaintiff's television developed The Shadow on the left side of the screen.  (McCalley Dec. at ¶3.)

On June 6, 2007, after this case was filed, Mr. McCalley called a local repair shop, Industrial Electronic Repair ("IER") to pay them to replace the Light Engine in his television.[1] The cost of repair was $913.77, which included the 25% discount that Samsung had offered Plaintiff.  As far as Samsung and IER were concerned, Plaintiff was responsible for 75% of the cost of the replacement part and 100% responsible for the labor.  Indeed, there was no confusion as to who was going to pay for the repair, as Plaintiff gave IER his credit card number over the phone on June 7, 2007.  IER then ordered the replacement part and, on June 16, 2007, replaced Mr. McCalley's Light Engine.  Three days later, on June 19, 2007, IER credited Mr. McCalley's account the money that it had charged him on June 7, 2007, when it had taken his credit card information.[2]  (McCalley Dec. at ¶8.)

Contrary to the impression created by Samsung, Mr. McCalley never was offered a free repair and did not "voluntarily" accept Samsung's refund to compromise his claims (Defendants' Brief at 13) for the problems he experienced with his television.  (McCalley Dec. at ¶4.)  In fact,

---

[1]      Mr. McCalley had called Samsung on April 16, 2007, and asked that Samsung fix his television.  As it did with other customers, Samsung told Mr. McCalley that his television was out of warranty, and gave him the name of IER so that he could pay for his own repair. (McCalley Dec. at ¶6.)

[2]      Even though the agreed to cost of repair was $913.77, Mr. McCalley was inexplicably charged and then credited $913.24.  (McCalley Dec. at ¶8.)

despite repeated requests for a warranty repair, Samsung customer service personnel never offered more than a  25% discount off of replacement parts.  (McCalley Dec. at ¶5.)  Only after Mr. McCalley filed this suit did Samsung, through IER, credit back the amount Mr. McCalley paid for the repair into his checking account without his knowledge.  (McCalley Dec. at ¶5.)

## ARGUMENT

## APPLICABLE LEGAL STANDARDS

For purposes of Defendants' motion based on Rule 12(b)(6), this court must "'accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.'"  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

With respect to Defendants' motion challenging the Court's jurisdiction pursuant to Rule 12(b)(1), dismissal would be proper only if Plaintiff's claims "clearly appear[ed] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991) (internal quotation marks and citation omitted).  A claim is "insubstantial" if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." Hagans v. Lavine, 415 U.S. 528, 538 (1973) (internal quotation marks and citation omitted).

Samsung's Rule 12(b)(1) motion is premised on the Declaration of Jeonghwan On, which addresses the alleged facts of Mr. McCalley's transaction. The Court may go beyond the pleadings to consider that affidavit, but it must also consider any affidavit(s) submitted by the plaintiff. See Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002); Int'l Assoc. of Machininsts & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). If, however (as Plaintiff will show here), plaintiff's affidavit presents a disputed issue of material fact, the Court must allow that the case proceed to a plenary trial to resolve the jurisdictional challenge. Id. at 712.

## POINT I

### THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

**A.     This Court Has Jurisdiction Over All of Plaintiff's Class Claims – Including Those Brought Under the Magnuson-Moss Act – By Virtue of the Expansion of Federal Diversity Jurisdiction by the Class Action Fairness Act of 2005**

Samsung does not dispute that Magnuson-Moss "enhances the consumer's position by allowing recovery under a warranty without regard to privity of contract between the consumer and warrantor, by prohibiting the disclaimer of implied warranties in a written warranty, and by enlarging the remedies available to a consumer for breach of warranty, including the award of attorneys' fees." Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 59 (App. Div. 1981) (citation omitted).

Samsung contends, however, that this Court lacks subject matter jurisdiction to adjudicate the Magnuson-Moss claims, because there is only one named class representative. In doing so, Samsung overlooks CAFA, which expanded the original jurisdiction of the federal courts to adjudicate class action claims – including Magnuson-Moss claims such as this one.

In promulgating CAFA, Congress amended the diversity jurisdiction statute so as to convey original federal jurisdiction for all class actions filed after February 18, 2005, where the amount in controversy "exceeds the sum of or value of $5,000,000, exclusive of interest and costs," regardless of whether the complaint includes federal subject matter claims. 28 U.S.C. §1332(d).   Plaintiff's jurisdictional allegations, which Samsung has not disputed, assert an entitlement to file in this Court on the basis of CAFA. (Complaint ¶2.)

Indeed, courts have repeatedly held that CAFA confers federal court jurisdiction over Magnuson-Moss claims contained within class action complaints, even if the claims do not meet Magnuson-Moss's own requirements for federal court jurisdiction. See, e.g., McGee v. Cont'l Tire N. Am., Inc., 2007 WL 2462624, *1, 4 (D.N.J. Aug. 27, 2007) ("Because [Magnuson-Moss] expressly contemplates alternative jurisdiction 'in any court of competent jurisdiction' and the Congress intended for CAFA to expand federal court jurisdiction over class actions, the Court finds that CAFA provides an alternate basis of jurisdiction for [Magnuson-Moss] claims.") accord, Brothers v. Hewlett-Packard Co., 2007  WL 485979, *1, 8 (N.D. Cal. Feb. 12, 2007); Clark v. Wynn's Extended Care, 2007 WL 922244, *1, 4-5  (N.D. Ill. March 23, 2007). Samsung cites no authority to the contrary.

The overwhelming weight of authority establishes that Magnuson-Moss claims may be brought in federal court by virtue of CAFA.  Plaintiff's Magnuson-Moss claims are properly before this Court.

**B.      Samsung's Attempt to Refund Plaintiff's Repair Expenditures After the Filing of this Suit Does Not Moot Either His or the Class' Claims**

Samsung's assertion that its unilateral, post-lawsuit decision to credit Mr. McCalley (unbeknownst to him) the money he paid for the repair of his television moots this case is wrong as a matter of both fact and law.  As the McCalley Declaration makes clear, the facts are

anything but that plaintiff "voluntarily … accept[ed] … free repairs to his television," as Samsung has claimed. (Defendants' Brief at 14.)

But regardless of the true facts of Samsung's belated action, Samsung's argument has been rejected by controlling precedent from both the United States Supreme Court and the Third Circuit Court of Appeals. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980); Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004). These authorities hold that a defendant may not frustrate a class action by "picking off" the named class representative. In any event, even if Samsung's attempted "pick off play" were legally permissible, Samsung's failure to provide Mr. McCalley all the relief that he seeks -- including but not limited to class certification and relief to the Class -- maintains this case as a live controversy. Accordingly, Samsung's Rule 12(b)(1) motion should be denied.

### 1. Samsung's Mootness Claim Should be Rejected, as it Raises Contested Issues of Material Fact

Samsung's conclusory contention that Mr. McCalley voluntarily sought and accepted repair of his television glosses over the actual facts. In reality, as stated in the McCalley Declaration, Samsung repeatedly refused to provide Plaintiff any relief until after he filed this suit. Instead, Mr. McCalley was required to pay $913.24 to get his television repaired. Only after Samsung decided that it might gain a tactical advantage in this lawsuit did Samsung credit that sum back to Mr. McCalley, without his knowledge.

Plaintiff's sworn version of the facts surrounding the repair and purported reimbursement of the sum he paid is squarely opposed to that of Defendants. Samsung's legal arguments, which would not be valid even if the facts were as Samsung posits, are entirely reliant upon, and presume the veracity of this unresolved factual issue. As these material facts are contested,

Samsung's Rule 12(b)(1) motion fails on this basis alone. Int'l Assoc. of Machinists & Aerospace Workers, 673 F.2d at 712.

### 2.  Plaintiff's Potential Entitlement to Relief Beyond His Out of Pocket Expenses Maintains this Case as a Live Controversy

Plaintiff's Complaint seeks not only his out of pocket expenses for the repair, but also rescissionary damages (the cost of the defective Television), treble damages, attorneys' fees, and equitable and injunctive relief. (Complaint page 17.)  The Complaint also seeks certification of a class, and the same relief for the thousands of Television owners in that class.

Samsung's attempt to "pick off" Mr. McCalley offered nothing more than payment of Mr. McCalley's repair costs.  Defendants have not offered Mr. McCalley or the class members any of the other forms of damages or injunctive relief Plaintiff seeks.  As to those other forms of relief, there remains a live controversy that satisfies the "case or controversy" requirement of the U.S. Constitution. U.S. Const. art III, §2.  Thus, Samsung would not have completely mooted Plaintiff's claims even it were legally permitted to do so.

### 3.  Samsung Ignores Binding Precedent Holding that a Class Representative Cannot Moot the Claims of a Putative Class

Even if Samsung's belated, unilateral return of monies to Mr. McCalley did represent the absolute maximum that Mr. McCalley could recover individually, which it does not, binding appellate caselaw holds that Samsung cannot "pick off" Plaintiff and thereby moot the claims of the absent class.   In Roper, the Supreme Court rejected this same "pick off play," finding it contrary to the policies undergirding Rule 23 and the class action device:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievment.  It would be in the interests of a class action defendant to forestall any appeal of denial of class

certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs.

Roper, 445 U.S. at 339.  Roper also made clear that the "pick off play" is impermissible regardless of whether the class representative acquiesces in that tactic, affirming the opinion of the Fifth Circuit that had stated that "[t]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift." Roper v. Consurve, Inc., 578 F.2d 1106, 1110 (5th Cir. 1978), aff'd sub nom, Deposit Guaranty Nat. Bank v. Roper, 445 U.S. 326 (1980).

In Weiss, the Third Circuit, applying the Supreme Court's decision in Roper, held that the rights of the absent class may not be abridged even when an offer of judgment is tendered in the full measure of the class representative's damages, which (as discussed *supra* at 11) Samsung has not done here. 385 F.3d at 343-44.  The Third Circuit reiterated the Supreme Court's admonition in Roper that "allowing the defendants here to 'pick off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims . . . ." Id. at 344.

Weiss also relied upon the "relation back" exception to the mootness doctrine that the Supreme Court had carved out in Sosna v. Iowa, 419 U.S. 393 (1975), where the Court recognized that

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot before the district court can reasonably be expected to rule on the certification motion.  In such instances, whether the certification can be said to relate back to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

Weiss, 385 F.3d at 346 (quoting Sosna, 419 U.S. at 402 n. 11).  The Third Circuit found that this exception served to hold the claims of the absent class members extant, even if the claims of the class representative had become moot, finding that "it appears to be settled that once a class has been certified, mooting a class representative's claim does not moot the entire action because the class 'acquire[s] a legal status separate from the interest asserted by [the named plaintiff].'" Weiss,  385 F.3d at 342 (quoting Sosna, 419 U.S. at 399).

In sum, there is a serious dispute as to the material facts surrounding the repair of Mr. McCalley's television "at no cost."  Regardless, Defendants have not offered the entirety of the relief sought by Mr. McCalley, so that he still has unmooted claims in any event.  Finally, even if Samsung had offered Mr. McCalley all that he seeks individually, Roper and Weiss compel the rejection of Samsung's attempt to defeat this class acton by "picking off" the class representative, since those precedents instruct that the claims of the absent class acquire their own legal status separate from that of the class representative.  Neither Mr. McCalley's claims nor those of the class are moot.  Samsung's Rule 12(b)(1) motion should be denied.

## POINT II

### PLAINTIFF STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED

**A.     Plaintiff Has Validly Pleaded the Breach of Contract Claims of the Class, As the Alleged Characteristic, Inherent, and Latent Defect Constituted a Non-Conformity with Samsung's Express and Implied Warranties Which Were Breached at the Time of Delivery, Within the Warranty Period**

Plaintiff has alleged that the characteristic and inherent Light Tunnel Defect he alleges is contained in every one of the Televisions at the time of delivery constitutes a breach of Samsung's express and implied warranties which accompanied their sale. (Complaint ¶¶85-94.) Samsung argues that because this characteristic and inherent defect often manifests itself after the express warranty period, Samsung has no warranty liability. Samsung confuses the issue of

13

the accrual of Plaintiff's claims during the warranty period with the separate (and irrelevant) issue of the later manifestation of that latent defect that, for the first time, puts the unsuspecting consumer on notice of his nonconforming goods. In fact, New Jersey law[3] is clear that a warranty claim accrues at the time of the *tender* of the allegedly non-conforming merchandise, which occurred within the warranty period.

Under New Jersey law, "[a] cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's knowledge of the breach." See N.J.S.A. §12A:2-725(2); see also Heavner v. Uniroyal, Inc., 63 N.J. 130, 152 (1973); Comm'rs of Fire Dist. No. 9 v. Am. La France, 176 N.J. Super. 566, 571 (App. Div. 1980). Therefore, in a matter alleging the sale of defective and therefore non-conforming goods "the cause of action for breach of warranty accrues when tender of delivery is made." Fire Dist. No. 9, 176 N.J. Super. at 572.

For this reason, New Jersey appellate courts have held that it is appropriate to certify classes that include all purchases of products regardless of whether or when alleged defects have manifested themselves. In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 427-28, 431 (1983); Delgozzo v. Kenny, 266 N.J. Super. 169, 195 (App. Div. 1993).[4]

---

[3]     Defendants premise their arguments entirely on New Jersey law. Accordingly, for purposes of this motion, Plaintiff discusses New Jersey law as well. Samsung's intimation (Defendants' Brief, at 12 & n.3) that no multi-state class can be certified in this case is not only premature, but mistaken. There are many consumer fraud cases where courts have certified a multi-state or nationwide class. See, e.g. In re Computer Memories Sec. Lit., 111 F.R.D. 675, 686 (N.D. Cal. 1986) (likelihood of applying California law to nationwide class where defendant was a California corporation, acts complained of emanated from California, and monies relating to unjust enrichment collected in California).

[4]     Other jurisdictions agree. See, e.g., Coghlan v. Wellcraft Marine Corp., 240 F.3d 449, 455 (5th Cir. 2001) (buyer may seek benefit of bargain damages for breach of warranty even if defect never manifests); Hicks v. Kauffman & Broad Home Corp., 107 Cal. Rptr. 2d 761, 914 (Cal. App. 2001) (latent foundation defect in home likely to manifest during home's useful life breaches express and implied warranties even if defect never occurs); Microsoft v. Manning, 914 S.W.2d 602, 608 (Tex. App. 1995) (software manufacturer liable for breach of warranty even if

14

The reasoning behind these decisions is that purchasers of goods containing characteristic defects suffer damages simply by virtue of being tendered goods that fail to meet warranted standards of quality -- both express and implied -- and have therefore received less than what they bargained for. In this matter, the fact that the Television is worth less than Mr. McCalley bargained for is illustrated by the conceded fact that Mr. McCalley had to spend $913.24 for a mere temporary fix that itself is destined to fail.

Samsung is alleged to have sold the Televisions now at issue under the express and implied warranties that they were free from material defects and met standards of merchantability. (Complaint ¶¶85-94.)  Neither warranty made by Samsung was true at the time of tender.  The dates of the ultimate manifestation of this characteristic Defect, or when the consumer is eventually made aware of it, are of no moment, as the breach occurred at the time of tender, well within the warranty period.

Samsung breached its express and implied warranties that these products were free from material defects, and fully merchantable, at the time of sale.  Samsung's arguments should be rejected, and the warranty claims upheld.[5]

---

defective conditions in software are never encountered by consumer) rev'd on other grounds, Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430 (Tx. 2007); Martin v. Amana Refrigeration, Inc., 435 N.W.2d 364, 368 (Iowa 1989) (class included all purchasers of defective water heaters without regard to whether product had yet failed).

[5]      Samsung's only substantive attack on the Magnuson-Moss claim is the contention that since Plaintiff has not validly pleaded a warranty claim, he cannot have stated a Magnuson-Moss claim. (Defendants' Brief, at 9).  Since Mr. McCalley has established the validity of his breach of express and implied warranty claims, Defendants' Magnuson-Moss attack fails.  Plaintiff addressed Samsung's challenge to the Court's jurisdiction to hear that the Magnuson-Moss claim *supra* at 7.

**B.      Plaintiff has Stated a Claim Under the Consumer Fraud Act for Samsung's
        Affirmative Misrepresentations and Knowing Omissions and
        for its Aggravated Breach of Warranty**

Plaintiff and the class assert claims under the New Jersey Consumer Fraud Act ("the

Act") on two bases.  First, Defendants made affirmative misrepresentations and knowingly

omitted material facts about the Defect in the Televisions.  Second, Samsung breached its

warranties to consumers, with the aggravating circumstance of Defendants' knowing

concealment of their knowledge of the Defect.

The Act is remedial and is to be liberally construed in favor of protecting consumers.

Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69 (1985); Cox v. Sears Roebuck & Co., 138 N.J. 2,

15 (1994); see also Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139 (1999) (the Act's

"provisions are [to be] construed liberally in favor of the consumer to accomplish its deterrent

and protective purposes").  Importantly, "[t]he history of the Act is one of constant expansion of

consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).

In pertinent part, the Act proscribes:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise or
> real estate, or with the subsequent performance of such person as
> aforesaid, whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful
> practice . . . .

N.J.S.A. 56:8-2.

A defendant can be liable under the Act for affirmative acts and for knowing omissions

of material facts.  Leon v. Rite Aid Corp., 340 N.J. Super. 462, 469 (App. Div. 2001) (citing

Cox, 138 N.J. at 7); Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 475 (D.N.J.

2007).  "When the alleged violation is an affirmative act, plaintiff need not prove defendant's intent nor even necessarily actual deceit or fraud." <u>Leon</u>, 340 N.J. Super. at 468 (citations omitted), <u>see also</u> <u>Cox</u>, 138 N.J. at 17-18 (similar).  "Any unconscionable commercial practice is prohibited." <u>Leon,</u> 340 N.J. Super. at 468.  "The capacity to mislead is the prime ingredient of all types of consumer fraud." <u>Cox</u>, 138 N.J. at 17 (citation omitted).

### 1. Plaintiff States a Claim Under the Act Based on Defendants' Affirmative Misrepresentations and Knowing Omissions

In order to state a claim under the Act, a plaintiff must allege:  (1) unlawful conduct by defendant; (2) an ascertainable loss; and (3) a causal relationship between defendant's unlawful conduct and plaintiff's ascertainable loss. <u>E.g.</u>, <u>Strzakowlski v. Gen. Motors Corp.</u>, 2005 WL 2001912 *1, 4 (D.N.J. Aug. 16, 2005) (citing <u>Dabush v. Mercedes Benz, LLC</u>, 378 N.J. Super. 105, 114 (App. Div. 2005).  Defendants challenge only the allegation of unlawful conduct.  As demonstrated below, Plaintiff has alleged sufficient facts to support his claim.

The complaint alleges in great detail that Defendants made affirmative misrepresentations and knowingly omitted material facts to capitalize on the market for televisions that offer high definition resolution, large screens, and excellent picture quality, and induce Plaintiff and the putative class to purchase Defendants' defective Televisions.  As alleged, Samsung's wrongful conduct includes:

- As Samsung well knew, its Televisions produced The "Shadow" causing part of the television screen to be a significantly darker shade than the rest of the screen, virtually eliminating the ability to view a program in the affected region, and rendering the Televisions unsuitable for their intended purpose.

- In its "subsequent performance," N.J.S.A. 56:8-2, Samsung has not honored its warranty obligations under either its own written warranty or applicable warranty laws, or offered to consumers any permanent fix. Instead, Samsung has offered only to replace the Light Engines with units containing – but not yet manifesting -- the Defect.

- With respect to consumers who have discovered the Defect after the expiration of the one year warranty period, when the Shadow most often begins to manifest, Samsung has refused to repair their Televisions, forcing consumers to spend well over $1,000.00 for replacement Light Engines.

- Despite Samsung's institutional knowledge of the Defect, Samsung's Customer Service personnel continue to publicly deny to consumers complaining about The Shadow that this characteristic and inherent Defect in the Light Tunnel even exists.

- Instead of recalling all of the defective Televisions it has sold to an unsuspecting public, Samsung has engaged in a "secret recall." It has offered to pay a small portion of the expense to repair the Defect in Televisions of consumers who threaten legal action or who have publicized their experiences on the internet.

- Despite its knowledge, Samsung has continued to misrepresent that its HDTV televisions provide excellent video quality and has continued to omit to disclose to consumers the existence of the inherent and latent Defect -- none of whom would have purchased the Televisions had they known of this material fact.

(Complaint ¶¶10-18, 27-31.)

In short, Samsung represented that its Televisions would provide excellent video quality when, in fact, they did not and could not. Samsung misrepresented that the Televisions were free from defects, when in fact they contain a significant defect. Samsung represented that the Televisions were color accurate, when in fact they were not, due to the Defect. Samsung represented that the Televisions were of a particular standard, namely, that they would properly play HDTV and standard definition programming, when in fact they would not without The Shadow obscuring the viewing screen. Samsung compounded its wrongdoing by replacing the defective components with components that contained the identical Defect. All the while, Samsung continued selling the defective Televisions and continued to misrepresent their true quality.

These allegations also demonstrate that Defendants knowingly omitted material facts concerning their HDTVs in order to induce customers to purchase the Televisions. Specifically, Samsung intentionally failed to inform Plaintiff and class members that, at the time of sale, the

Televisions had an inherent Defect in the Light Tunnel, which would produce The Shadow, literally leaving consumers with less television than they bargained and paid for.[6]

As the court in <u>Leon</u> observed in reversing the grant of a motion to dismiss a claim under the Act, "It is well to remember that the Consumer Fraud Act is aimed at more than the stereotypic con man. 'The statutory and regulatory scheme is also designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services.'" 340 N.J. Super. at 471 (quoting <u>Div. of Consumer Affairs v. G.E. Co.</u>, 244 N.J. Super. 349, 353 (App. Div. 1990)). Plaintiff has amply alleged wrongful conduct, independent of any breach of warranty. Samsung's motion to dismiss Plaintiff's claim under the Act should be denied.

### 2. Plaintiff States a Claim Under the Act Based on Defendants' Breach of Warranty

Plaintiff also states a claim under the Act based on Defendants' breach of warranty. The court in <u>Viking</u> implicitly recognized that a plaintiff may state separate claims for consumer fraud based on (1) defendant's affirmative misrepresentations and/or knowing omissions, and (2) defendant's breach of warranty. 496 F. Supp. 2d at 475-76.

A plaintiff who alleges the presence of "substantial aggravating circumstances...in addition to the breach [of warranty,]" states a claim under the Act. <u>Cox</u>, 138 N.J. at 18 (citing <u>DiNicola v. Watchung Furniture's County Manor</u>, 232 N.J. Super. 69, 72 (App. Div.), <u>certif. denied</u>, 117 N.J. 126 (1989), <u>see also</u> <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 587 (3d Cir. 1997); <u>Viking</u>, 496 F. Supp. 2d at 476; <u>Strzakowlski</u>, 2005 WL 2001912, at *5. "Determination of

---

[6]     As discussed in the Statement of Facts, when Plaintiff telephoned Samsung to report the problem, Samsung's representative was all too familiar with it. The Samsung representative asked Plaintiff whether "the stripe was growing." <u>See</u> Affidavit of Keith J. Weingold, Exhibit A.

whether there has been sufficient aggravating circumstances is made on a case-by-case basis."
Strzakowlski, 2005 WL 2001912, at *5.  "[T]he concealment of known defects in a product and
false assurances of repair have been held to state a claim under the [Act]." Id. at *5 (citing Perth
Amboy Iron Works, Inc. v. Am. Home Assur. Co., 226 N.J. Super. 200 (App. Div. 1988), aff'd,
118 N.J. 249 (1989)).

In Strzakowlski, plaintiff alleged that defendant manufactured and sold vehicles
containing defective engines. 2005 WL 200192, *1.  Plaintiff sued defendant based on breach of
express warranty and violation of the Act. Id. at *2.  Defendant moved to dismiss, arguing, in
part, that plaintiff did not allege any aggravating factors in order to transform his breach of
warranty claim into a consumer fraud claim. Id.

The court denied the motion, finding that plaintiff had sufficiently alleged aggravating
circumstances to state a claim under the Act. Id. at *5.  The court cited plaintiff's allegations
that:  (1) defendant continued to market the vehicles even though it knew of the defect; (2)
defendant knowingly concealed information regarding the defect with the intent that consumers
purchase the defective vehicles; and (3) the repair procedure initiated by defendant was intended
to further mislead consumers by hiding detectable manifestations of the defect until expiration of
the warranty, thus, transferring the cost of repair to consumers.  Id.

Similarly, in Suber, shortly after purchasing a van manufactured by defendant, plaintiff
began to experience problems with the suspension system.  Attempts at repair failed, so plaintiff
filed a claim with Chrysler's informal dispute resolution body. 104 F.3d at 581.  Pursuant to its
procedures, a Chrysler representative and a dealer's representative inspected and test drove the
vehicle. Id.  Both the dealer employee and the Chrysler representative agreed that there was a
problem with the vehicle's suspension. Id.  However, the official report of the Chrysler

representative stated that the suspension system was fine, and as a result, plaintiff's claim for a refund of the purchase price was denied. Id.  Thereafter, Chrysler sent customers, including plaintiff, a Customer Satisfaction Notice, which essentially acknowledged the problem with the suspension system and requested that owners make appointments for service.  Id. at 582. Chrysler also sent its dealers a Technical Services Bulletin ("TSB") detailing the repair work needed to correct the suspension problem. Id.

Plaintiff sued Chrysler, alleging, among other claims, violation of the Act. Id. The district court dismissed the complaint finding that the amount in controversy did not exceed $50,000, and that, plaintiff could not rely on the Act's treble damages provision since plaintiff failed to provide evidence of substantial aggravating circumstances surrounding the alleged breach of warranty. Id. at 582, 586.

In reversing the district court, the Third Circuit found that plaintiff did allege sufficient aggravating circumstances. Id. at 587.  The court noted the discrepancy between plaintiff's affidavit and the Chrysler representative's report concerning the representative's opinion on the condition of the van. Id.  The court also noted that plaintiff's allegation that Chrysler knew of the problem was supported by the TSB issued by Chrysler. Id.

Here, Mr. McCalley has sufficiently alleged substantial aggravating circumstances.  The complaint asserts that Samsung knew early on about the Defect, but continued to sell the Televisions anyway, all the while concealing the truth from purchasers.  These are the same allegations that sufficed in Strzakowlski and Suber.

Plaintiff also alleges that Samsung fraudulently concealed the existence of the Defect and delayed legal action by consumers, by representing that it could repair the Defect by replacing the Light Engine, when in fact, the replacement components contained the identical Defect as the

original parts.  The "repair" was no repair at all.  As in Strzakowlski, the repair was designed only to mask visible signs of the Defect rather than fixing it.  These are substantial aggravating circumstances that sufficiently state a claim under the Act based on Defendants' breach of warranty.

Defendants rely heavily on Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99 (App. Div. 2006), and Duffy v. Samsung Elecs. Am., Inc., 2007 WL 703197, *1 (D.N.J. Mar. 2, 2007). But both Perkins and Duffy are distinguishable.

In Perkins, by the time plaintiff brought her claim, the allegedly substandard car part had not failed. 383 N.J. Super. at 103, 105-06.  Here, Mr. McCalley's Television did fail and The Shadow appeared.

In Duffy, the court found that plaintiff did not allege that the defendant "knowingly" failed to disclose that the microwaves at issue contained a defective part and were fire hazards. 2007 WL 703197 at *7.  In contrast, Mr. McCalley alleges that Samsung omitted the fact that the Light Engines were defective in order to induce Plaintiff and the putative class to purchase Defendant's Televisions.

Finally, neither in Perkins nor Duffy did the plaintiff demonstrate the presence of substantial aggravating circumstances in addition to the breach.  Here, Plaintiff's complaint is replete with allegations of the presence of substantial aggravating circumstances as discussed *supra*.

For all these reasons, Plaintiff has stated a claim under the Act.  Samsung's motion to dismiss that claim should be denied.[7]

---

[7]      In addition to stating a claim for breach of express and implied warranty, and violation of the New Jersey Consumer Fraud Act, the facts as alleged state a claim of unjust enrichment.  The $4,000.00 paid by each customer to Samsung for what turned out to be

## CONCLUSION

For the reasons stated in this brief, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety.

Date:  September 21, 2007

**LITE DEPALMA GREENBERG & RIVAS, LLC**

By:    s/ Bruce D. Greenberg
Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ  07012
Tel.:(973) 623-3000
Fax: (973).623-0211
BGreenberg@ldgrlaw.com
MTarantino@ldgrlaw.com

**ROBERT I. LAX & ASSOCIATES**
Robert I. Lax
535 Fifth Avenue, Suite 2100
New York, NY 10017
Tel: (212) 818-9150
Fax: (212) 208-4309

**LANGE & KONCIUS, LLP**
Joseph J.M. Lange
Jeffrey A. Koncius
222 North Sepulveda Blvd. – Suite 1560
El Segundo, CA 90245
Tel: (310) 414-1880
Fax: (310) 414-1882

**LAW OFFICE OF DANIEL E. SOBELSOHN**
Daniel E. Sobelsohn
1875 Century Park East – Suite 700
Los Angeles, CA 90067
Tel: (310) 461-1333
Fax: (310) 861-5205

Attorneys for Plaintiff

---

defective Televisions was plainly an unfair exchange that unjustly enriched Defendants.  VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).