UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————————— x
IN RE SAMSUNG DLP TELEVISION   :  Civil Action No.: 07-2141(JAG) (MCA)
CLASS ACTION LITIGATION   :
   :  **CONSOLIDATED CLASS ACTION**
This Document Relates To:   :  **COMPLAINT AND JURY DEMAND**
All Actions   :
   :
———————————————————— x

     Phil McCalley, David Jinks, Jossef Goldberg, George Menendez, Paul C. Giachetti, Chad Owens, Chris Choi, Walter J. Bertram, Jr., Doug Dowden, and Seth Pascale (collectively "plaintiffs"), by and through their attorneys, make the following allegations and claims for their Consolidated Class Action Complaint against Samsung Electronics America, Inc. (hereinafter "SEA"), and Samsung Electronics Co., Ltd. (hereinafter "SEC") (collectively referred to as "Samsung" or "defendants"). The following allegations are made upon information and belief, except as to allegations specifically pertaining to plaintiffs, which are made upon knowledge.

## IDENTIFICATION OF PARTIES (LOCAL CIVIL RULE 10.1)

     1.     The names and addresses of the named parties to this action are as follows: (i) Plaintiff Phil McCalley, 3921 Caparosa Circle, Melbourne, Florida 32947; (ii) Plaintiff David Jinks, 5710 Ruddell Rd. SE, Suite 2, Lacey, Washington 98503; (iii) Plaintiff Jossef Goldberg, 2127 North 59th Street, Seattle, Washington 98103; (iv) Plaintiff George Menendez, 2920 College View Drive, Melbourne, Florida 32935; (v) Plaintiff Paul C. Giachetti, 311 Towne House Village, Hauppauge, New York 11749; (vi) Plaintiff Chad Owens, 524 Dickson Hill Circle, Springdale, South Carolina 29170; (vii) Plaintiff Chris Choi, 4489 Spencer Street, #316, Torrance, CA 90503; (viii) Plaintiff Walter J. Bertram, Jr., 2819 Lindberg Ave., Allentown, PA 18103; (ix) Doug Dowden, 108 Trappers Ct., Naperville, IL 60565; (x) Plaintiff Seth Pascale, 551 Talia Circle, Fairview, TX 75069; (xi) Defendant Samsung Electronics America, Inc., 105

Challenger Road, Ridgefield Park, New Jersey 07660; and (xii) Defendant Samsung Electronics Co., Ltd., 250, Taepyeongno 2-Ga, Jung-gu, Seoul 100-742, Republic of Korea.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and defendants.

3.      Venue is proper in this District under 28 U.S.C. §1391(a)(1) and (2). Defendant SEA maintains its headquarters in Ridgefield Park, New Jersey, and both defendants conduct substantial business in this District, including conduct directed at members of the Class, such as the promotion, sale, and marketing of their products, sufficient to render all of them within the jurisdiction of this Court. The events and conduct giving rise to the violations of law in this action constitute interstate commerce, and a significant portion thereof occurred in this District.

## PRELIMINARY STATEMENT

4.      This class action is brought by plaintiffs seeking damages and equitable relief on their own behalves and on behalf of all others similarly situated in the United States who have purchased Samsung HL-P, HL-R, and HL-S Series Rear Projection Televisions (the "Televisions") from 1995 to the Present (the "Class"). Plaintiffs allege that the Televisions possess a characteristic and inherent defect in a component known as the "Light Tunnel" (the "Defect"). The Defect causes a video anomaly that consumers have come to call "the Shadow", which appears as a linear darkened strip running down the side of the Television's viewing screen. Left unrepaired, the Shadow grows to cover more of the Television's screen. It is alleged by plaintiffs that Samsung knew or should have known of the Defect at the time Samsung placed the Televisions into the stream of commerce in this jurisdiction and throughout the United States. Samsung has compounded its improper sale of the defective Televisions by acting in contravention of applicable federal and state warranty laws and refusing to honor its obligation to repair the Defect without cost to members of the Class.

2

5.      As such, Samsung has perpetuated a consumer fraud upon unsuspecting consumers within the United States who purchased the Televisions by misrepresenting the character and quality of the Televisions.   Samsung marketed these Televisions as high-end videophile devices, with a high definition picture far superior to that provided by a standard television.  These claims were untrue, in light of the Defect.  By making these untrue claims, and by failing to disclose the Defect, Samsung was able to command suggested retail prices for these units of approximately $4,000.00, or more.   In fact, however, the Defect contained in the Televisions, and the Shadow which it causes to appear on the screen, severely impair their value to consumers.

## PARTIES

6.      Plaintiff Phil McCalley is a citizen of Florida.  Mr. McCalley purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home.  The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. McCalley and Samsung.   Although Mr. McCalley demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty.  Instead, Samsung told Mr. McCalley that his Television was out of warranty and he would have to pay for its repair.  Only after this lawsuit was filed, and Mr. McCalley had arranged to have his Television repaired at his expense, and after he paid for such repair, did Samsung reimburse him for the repair.  At no time was Mr. McCalley told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

7.      Plaintiff David Jinks is a citizen of Washington.  Mr. Jinks purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home.  The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Jinks and Samsung.   Although Mr. Jinks demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its

warranty. Instead, Samsung told Mr. Jinks that his Television was out of warranty and he would have to pay for its repair. At no time was Mr. Jinks told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

8.      Plaintiff Jossef Goldberg is a citizen of Washington. Mr. Goldberg purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home. The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Goldberg and Samsung. Although Mr. Goldberg demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. Instead, Samsung told Mr. Goldberg that his Television was out of warranty and he would have to pay for its repair. Only after this lawsuit was filed, did Mr. Goldberg receive a repair from Samsung. At no time was Mr. Goldberg told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

9.      Plaintiff George Menendez is a citizen of Florida. Mr. Menendez purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home. The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Menendez and Samsung. Although Mr. Menendez demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. Instead, Samsung told Mr. Menendez that his Television was out of warranty and he would have to pay for its repair. At no time was Mr. Menendez told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

10.      Plaintiff Paul C. Giachetti is a citizen of New York. Mr. Giachetti purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home. The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain

4

between Mr. Giachetti and Samsung.  Although Mr. Giachetti demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty.  Instead, Samsung told Mr. Giachetti that his Television was out of warranty and he would have to pay for its repair.  At no time was Mr. Giachetti told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

11.     Plaintiff Chad Owens is a citizen of South Carolina.  Mr. Owens purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home.  The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Owens and Samsung.  Although Mr. Owens demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty.  Instead, Samsung told Mr. Owens that his Television was out of warranty and he would have to pay for its repair.  At no time was Mr. Owens told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

12.     Plaintiff Chris Choi is a citizen of California.  Mr. Choi purchased directly from Samsung, and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home.  The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Choi and Samsung.  Although Mr. Choi demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty.  Instead, Samsung told Mr. Choi that his Television was out of warranty and he would have to pay for its repair which Mr. Choi did himself pay for.  At no time was Mr. Choi told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

13.     Plaintiff Walter J. Bertram, Jr., is a citizen of Pennsylvania.  Mr. Bertram purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home.  The Defect manifested

on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Bertram and Samsung. Although Mr. Bertram demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. Instead, Samsung told Mr. Bertram that his Television was out of warranty and he would have to pay for the cost of the service call to have his Television repaired. After Mr. Bertram had paid for the service call, and subsequent to it, the Shadow appeared again. Although Mr. Bertram again demanded a warranty repair from Samsung and again gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. At no time was Mr. Bertram told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

14.     Plaintiff Doug Dowden is a citizen of Illinois. Mr. Dowden purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home. The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Dowden and Samsung. Although Mr. Dowden demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. Instead, Samsung told Mr. Dowden that his Television was out of warranty and he would have to pay for its repair which Mr. Dowden did himself pay for. At no time was Mr. Dowden told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

15.     Plaintiff Seth Pascale is a citizen of Texas. Mr. Pascale purchased and used a Television which was knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants for use in his home. The Defect manifested on his Television creating a Shadow on his Television screen so as to result in the loss of the benefit of the bargain between Mr. Pascale and Samsung. Although Mr. Pascale demanded a warranty repair from Samsung and gave notice of the Defect to Samsung, Samsung refused to repair the Defect and honor its warranty. Instead, Samsung told Mr. Pascale that his Television was out of warranty and he

would have to pay for its repair.  At no time was Mr. Pascale told by Samsung that his television was experiencing a known defect which was inherent to the Televisions.

16.     Defendant SEA is a New York corporation, with its principal offices in Ridgefield Park, New Jersey.  SEA imports, manufactures, and/or distributes consumer electronic products, including the Televisions containing the Defect forming the subject matter of this action, which it caused to be placed into the stream of commerce in this District and throughout the United States.

17.     Defendant SEC is a corporation formed under the laws of the Republic of Korea, with its principal offices located in Seoul, Korea, and conducts substantial business operations at the offices of SEA in Ridgefield Park, New Jersey, Mount Arlington, New Jersey, and Piscataway, New Jersey.  SEC designed, engineered, manufactured, and purposefully caused the Televisions to be placed into the stream of commerce within this District and throughout the United States.

18.     Plaintiffs are informed and believe and therefore allege that at all relevant times, each defendant was the agent, servant, representative, successor, successor in interest and employee of the remaining co-defendants, and in doing the things hereinafter alleged, each was acting within the course and scope of said agency and employment and with the ratification and authorization of its respective principals.

**STATEMENT OF FACTS**

19.     High Definition Television ("HDTV") refers to a method of portraying television images in high resolution, with a high degree of picture detail and accuracy.  As such, HDTV televisions command prices several times higher than those for common standard definition television sets.  Consumers purchasing HDTV televisions therefore pay a significant premium for the ability to enjoy the high quality picture such television sets offer.

20.     Samsung offers its Televisions to capitalize on this market, purportedly offering high definition resolution and large screens to consumers desiring the best video experience available.  What Samsung misrepresented, omitted to disclose and concealed from the general

public, however, was the fact that the Televisions were known by it to produce the Shadow on the Television screen due to the Defect contained in the Light Tunnel. These omissions of material fact and false claims have allowed Samsung to command premium prices for these Televisions, which it has successfully marketed as suitable for the most discerning videophiles seeking accurate color reproduction at the highest resolutions and fidelity possible.

21.   Consumers' experiences with these Televisions, including those of the named plaintiffs herein, have been completely contrary to what was explicitly represented by Samsung. Consumers have been dismayed to find that the Televisions display not the clear, color accurate picture for which they have paid so dearly, but rather display what have come to be known as the Shadow, which renders part of the Television screen a significantly darker shade than the rest of the screen, virtually eliminating the ability to view a program in the affected region of the Television. This Shadow greatly interferes with the viewing of the video program, and renders the Televisions unsuitable for their intended purpose and unusable as a television thereby breaching the implied warranty of fitness for a particular purpose. Based upon that implied warranty of the Televisions being fit for a particular purpose, and the skill and judgment of plaintiffs and the members of the Class, plaintiffs and the Class members unknowingly purchased the Televisions containing the Defect for personal use.

22.   The Shadow is believed to be caused by a manufacturing defect in the Televisions' Light Tunnel in which mirrors are insufficiently secured to the apparatus resulting in a partial blockage of the light path, which causes a material failure of the Televisions. The Light Tunnel is a component within the larger "Light Engine," which is the principal video component that causes the video signal to be displayed as a picture on the viewing screen. Samsung and/or its authorized servicers have told consumers that a Defect in the Light Tunnel is the cause of the Shadow and that repair of the Defect in the Light Tunnel requires the replacement of the entire Light Engine, among the most expensive components in the Televisions, at a cost of more than $1,000.00. Samsung knew or should have known of this

defect in the Light Tunnel, and the Shadow which consumers would experience as a result, but misrepresented and omitted to disclose this Defect in connection with the marketing and sale of the Televisions or thereafter.   Instead, Samsung continued to design, manufacture, market, distribute, and sell the defective Televisions as if it were unaware of the Defect.  However, at that time, Samsung knew that their Televisions would not be effectively tested for the Defect after they left Samsung's control and it knew that their express representations about the Televisions would be relied upon by end users and Samsung's distributors and retailers.

23.    Despite Samsung's institutional knowledge and awareness of the Defect, and Samsung's judicial admissions in this litigation about the Televisions and the Defect (discussed further below), Samsung's Customer Service personnel continue to deny to consumers complaining about the Shadow that this characteristic and inherent Defect in the Light Tunnel even exists.   Once a consumer's one-year Samsung written warranty has expired, Samsung disclaims any and all liability for the Defect, leaving the consumer to bear the cost of this expensive repair on his or her own, or purchase a new replacement television.

24.    Plaintiffs and the members of the Class had no knowledge of the cause of the Defect and did not suspect, nor did they have reason to suspect, that the Televisions and the Defect was caused by Samsung's wrongdoing.  Plaintiffs and the members of the Class could not have known or reasonably discover, nor had reason to know of, the Defect created by Samsung. Further, they could not have known or reasonably discovered that the Televisions they purchased were defective or that the cause of the harm suffered by plaintiffs and the members of the Class was directly attributable to the wrongdoing by Samsung alleged herein.

25.    Plaintiffs' and the Class members' lack of knowledge regarding the cause of their damages were due in large part to Samsung's concealment of material facts regarding the Defect. The fraudulent acts of concealment by Samsung included the intentional concealment and refusal to disclose facts known to Samsung about the Defect in the Televisions, which plaintiffs and the members of the Class could not reasonably have learned, known of, or otherwise discovered.  In fact, plaintiffs and the members of the Class did not know, nor could they have had reason to

know, that Samsung's overall malfeasance in designing, manufacturing, distributing, marketing and selling of its Televisions was a cause of their damage.

26.     Compounding its wrongdoing, Samsung has not honored its warranty obligations under either its own written warranty or applicable warranty laws.  To date, despite persistent consumer demands, Samsung has been unable or unwilling to develop or offer to consumers any permanent fix for the Defect.  Instead, for consumers experiencing the Defect prior to one year of purchase, Samsung has offered only to replace the components at issue with units containing – but not yet manifesting -- the Defect, but has done nothing to correct the underlying cause of the Defect.  As a result, although the replacement components serve as a temporary "band-aid" solution, the underlying Defect remains, and will cause the Shadow to reappear anywhere from several weeks to many months after installation, depending upon usage.

27.     The situation is worse for consumers first experiencing the inherent Defect after the one year period.  Despite the fact that Samsung knew or should have known of the latent and characteristic Defect contained in the Light Engines in the Televisions when they were sold to consumers, it has refused warranty repairs for consumers who have discovered the Defect after the expiration of the one-year warranty period when the Shadow most often begins to manifest. Consumers have been forced to spend well over $1,000.00 for replacement Light Engines, and incurred other expenses in transporting their Televisions – each of which weighs approximately 125 lbs. – to repair facilities.

28.     Samsung, as the designers, manufacturers, marketers, distributors and sellers, warranted, either expressly or by implication, that the Televisions being sold to the general public were not inherently defective.  Samsung breached their agreement and warranty by doing so and Samsung made and/or allowed these misrepresentations to be made with the intent of making plaintiffs and the members of the Class to enter into agreements to purchase the Televisions.  If plaintiffs and the members of the Class had known the true facts, they would not have purchased the Televisions or paid as much as they did for the Televisions.

29.     In addition, Samsung's express warranty did not include a conspicuous statement about the Defect and unusual early failure of the Television as a result.  As such, Samsung's limits on its express warranty are unenforceable as it knowingly sold a defective product without conspicuously informing consumers about the Defect making its express warranty unconscionable.  As a result, plaintiffs and the members of the Class did not receive the goods expressly warranted by Samsung, namely, fully functioning televisions free from defect.

30.     Samsung extended written limited warranties to plaintiffs and other members of the Class which it breached and failed to honor.  The time limitations contained in those limited warranties were also unconscionable and grossly inadequate to protect plaintiffs and the other members of the Class.  Among other things, plaintiffs and the members of the Class had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored Samsung over consumers; a gross disparity in bargaining power existed as between Samsung and plaintiffs and the members of the Class; and Samsung knew the Televisions were defective at the time of sale and would fail well before their useful lives, thereby rendering the time limitations insufficient and inadequate.

31.     Despite its knowledge of the Defect, at all relevant times, Samsung continued to misrepresent to consumers that the Televisions provide excellent video quality and omitted to disclose to consumers the existence of the Defect or cure the Defect at the design and/or manufacturing stage.  None of these consumers would have purchased the Televisions had they known of this material fact.

32.     While continuing to deny that the Defect exists, Samsung issued a Service Bulletin dated March 20, 2006, with respect to the Televisions (which Samsung referred to as "DLP" televisions), explicitly acknowledging the Defect in the Light Tunnel inside the Light Engine, and detailing the work necessary to address (at least temporarily) the Defect.  That Service Bulletin states, among other things: "BACKGROUND: The DLP shows a dark bar on the top, bottom, or one of the sides of the screen.  This is due to a defective Light Tunnel inside

the Light Engine." It then states: "SOLUTION: Replace the Light Tunnel. Do not replace the Light Engine."

33.     Although the Defect has been recognized internally at Samsung, as of the date of this Complaint, Samsung has refused to recall the Televisions and continues to deny to consumers the existence of the Defect. Indeed, instead of recalling all of the defective Televisions it has sold to an unsuspecting public, Samsung has engaged in a "secret recall" offering to pay a – usually small -- portion of the expense to repair the Defect in Televisions of consumers who threaten to file suit or take other legal action against Samsung, or those who have publicized their experiences on the internet.

34.     In filings made with the United States District Court for the District of New Jersey in connection with this litigation, Samsung made admissions about the existence of the Shadow, the Defect and the fact that Samsung has been aware of both that Defect and its cause for some time. Some of those admissions were made in general filings with the Court (the "Federal Admissions") and others were made in a sworn Declaration under penalty of perjury by JeongHwan On, a Senior Engineering Manager in the Customer Service Department of SEA (the "JeongHwan On Admissions"). A copy of the JeongHwan On Admissions are attached hereto as Exhibit "1" and are incorporated herein as if set out in full and at length. The Admissions confirm the facts alleged in this Complaint.

35.     Among the Federal Admissions made by Samsung was the statement that not only did this litigation "itself allege that the 'shadow' problem is caused solely by the light tunnel failure …, but Samsung has determined that this is in fact the case."

36.     Among the JeongHwan On Admissions made by Samsung was a statement that Samsung had been engaged in a process of refining and improving the Televisions over time, and that, "[i]n this process of refinement and improvement, Samsung has learned why some of the earliest DLP televisions it manufactured may eventually exhibit the 'shadow' problem alleged in the complaint." JeongHwan On Admissions at ¶ 7. As such, Samsung knew, or in the absence

of reckless disregard, should have known of the Defect alleged herein and before Televisions with the Defect had been sold to consumers.

37.     Also among the JeongHwan On Admissions made by Samsung was a statement about the precise cause of the Shadow defect and Samsung's knowledge of that.  Specifically, Samsung stated that "[t]he bonding agent in the light tunnel that holds together the multiple mirrors sometimes fails after a period of use, and one or more mirrors come loose, partially obscuring the light passing through the light tunnel."  JeongHwan On Admissions at ¶ 7.  As such, the Defect affects the Televisions immediately and begins causing the premature reduction of the useful life of the Televisions immediately upon use.

38.     Also among the Federal Admissions made by Samsung was a statement that "there will be no dispute in this case regarding the fact that some light tunnels in HL-R and HL-S series televisions have failed.  Nor will there be any material dispute regarding the cause of the failure— one or more light tunnel mirrors come loose…."

39.     Also among the JeongHwan On Admissions made by Samsung was a statement that "[a] new light tunnel costs Samsung less than $12."  JeongHwan On Admissions at ¶ 6.

40.     Also among the Admissions made by Samsung was a statement that hundreds, if not thousands, of the Televisions that were brought in to Samsung's authorized servicers by consumers for repairs due to the Shadow defect are or were (until Samsung "reconditioned" those Televisions, in the process destroying or irrevocably altering the components at issue) in the possession of Samsung.  Samsung admitted that Light Tunnels manufactured from April 2005 to April 2007 manifested the Shadow defect in HL-R and HL-S Televisions.  Further, and as admitted by Samsung, as of January 2008, approximately "2,000 light engines currently in storage have had light tunnel problems".  JeongHwan On Admissions at ¶ 17.

41.     The Televisions were sold to distributors and consumers with the knowledge and intent that the Televisions be used for the benefit of consumers.  Samsung and its distributors sold the defective Televisions to plaintiffs and the members of the Class in the course of their business.

13

42.     The Televisions were not altered by plaintiffs, the members of the Class, Samsung's distributors or other personnel.  The Televisions were defective when they left the exclusive control of Samsung and Samsung knew the Televisions would be used without additional tests for defects.  The Televisions were defective and unfit for their intended purpose and plaintiffs and the members of the Class did not receive the goods as warranted.

43.     By engaging in the above described conduct, Samsung committed acts and omissions which were actuated by actual malice and accompanied by a wanton and willful disregard of persons, including plaintiffs and members of the Class, who foreseeably might by harmed by those acts and omissions.

44.     As a direct result of Samsung's actions set forth herein, plaintiffs and the consumers who comprise the class who have purchased the Televisions have suffered injury in fact, have been damaged and have suffered a loss of money or property for having paid thousands of dollars for a product that does not, cannot, and will not, work as represented and that is now worth substantially less than what consumers paid and what a non-defective Television would be worth.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action on behalf of themselves and all other members of a class consisting of all purchasers of the Televisions in the United States (the "Class").  Excluded from the Class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including, without limitation, persons who are directors of Samsung.

46.     The Class is composed of no fewer than tens of thousands of persons nationwide, and is sufficiently numerous for class treatment.  The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

47.     Plaintiffs' claims are typical of the claims of the Class and plaintiffs have no interests adverse to the interests of other members of the Class.

14

48.    This dispute raises questions of law and fact that are common to all Class members.  Those common questions predominate over questions that arise on an individual basis for Class members.  The common questions of law and fact include, without limitation:

(a)    Whether Samsung's representations, omissions, and conduct regarding the Televisions were misleading or false;

(b)    Whether Samsung's representations and conduct were likely to deceive consumers into believing that the Televisions operated properly;

(c)    Whether Samsung violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., and the Magnusson-Moss Consumer Warranty Act, 15 U.S.C. § 2301, et seq.;

(d)    To the extent other State laws prohibiting consumer deception are applicable, whether Samsung violated the respective laws of those States;

(e)    Whether Samsung engaged in deception in marketing the Televisions;

(f)    Whether Samsung undertook a course of conduct to hide the existence of the Defect from the members of the Class;

(g)    Whether the Defect constitutes a manufacturing or design defect;

(h)    Whether the Defect constitutes a breach of Samsung's warranties;

(i)    Whether the members of the Class have been injured by Samsung's conduct;

(j)    Whether the members of the Class have sustained damages and are entitled to restitution as a result of Samsung's wrongdoing and, if so, what is the proper measure and appropriate formula to be applied in determining such damages and restitution; and

(k)    Whether the members of the Class are entitled to injunctive relief.

49.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in the prosecution of class action litigation.

50.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.  Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

51.     A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.   Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  If a Class or general public action is not permitted, Class members will continue to suffer losses and Samsung's misconduct will continue without proper remedy.

52.     Samsung has acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.)**
**(Misrepresentation and Omissions)**
**(Against All Defendants)**

53.     Each of the above allegations is incorporated herein.

54.     Samsung's    aforementioned    affirmative    misrepresentations    and    knowing omissions of material facts, as well as its wrongful warranty practices, were principally directed, disseminated and otherwise perpetrated from within the State of New Jersey.  SEA maintains its principal executive offices in Ridgefield Park, New Jersey, from where the policies relating to the sale and marketing of the Televisions, including the misrepresentations and omissions of fact complained of herein, were directed.  Additionally, SEA maintains its principal facility for after-market customer service and warranty support in Mount Arlington, New Jersey, where all customer communications regarding the servicing of the Televisions – including Samsung's refusal to honor its warranty and repair the Defect -- were directed and conducted.  Therefore,

based upon the choice of law rules applied in this District, plaintiffs preliminarily identify the substantive laws of New Jersey as the most likely to apply to the actions and omissions complained of herein, as New Jersey has the most substantial interest in protecting the consumer public from the wrongs complained of herein, which principally originated and were directed from within this State.

55.     In violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and particularly N.J.S.A. 56:8-2, Samsung used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon, in its marketing, distribution, sale, advertisement, and responding to customer inquiries concerning the Televisions.

56.     These misrepresentations, omissions and unconscionable commercial practices include:

(a)     Samsung misrepresented that the Televisions were free from defects, when in fact they contain a significant defect that renders the Televisions entirely unfit and unusable for their intended purpose;

(b)     Samsung represented that the Televisions were capable of properly rendering a video program, and that they were able to do so with a high degree of precision, when in fact they are unable to do so due to the Shadow, which the Defect causes to appear across the viewing screen and (increasingly, over time) interferes with the picture;

(c)     Samsung represented in marketing materials and product manuals that the Televisions had characteristics which they did not have, as the Televisions were incapable of properly rendering video without the Shadow obscuring the viewing screen;

(d)     Samsung represented that the Televisions were of a particular standard, namely, that they would properly play HDTV and standard definition programming, when in fact they would not without the Shadow obscuring the viewing screen;

(e)     Samsung advertised the Televisions as providing high quality video playback with the intent not to sell the Televisions as advertised – indeed, Samsung continued selling the Televisions even after it became aware of the Defect;

(f)     Samsung represented that the Televisions were capable of high quality, color accurate, video display, when in fact they were not, due to the Defect;

(g)     To fraudulently conceal the existence of the Defect and delay legal action by consumers, Samsung represented that it could repair the Defect by replacing the Light Engine when the replacement components contained the identical Defect as the original parts; and

(h)     To reap further profits to which it was not entitled, Samsung induced consumers to pay for replacement Light Engines and/or Light Tunnels, which Samsung sells to authorized servicers and parts retailers, and for the labor to install those parts, even though Samsung knew those repairs would, at best, only temporarily remedy the Defect.  Moreover, as stated in its March 20, 2006, Service Bulletin, and in yet another of Samsung's JeongHwan On Admissions, Samsung now says that only the Light Tunnel, which Samsung has stated costs it less than $12, in comparison to the far more expensive Light Engine, needs to be replaced to, purportedly, remedy the Defect.  Samsung's prior direction to its authorized servicers that the entire Light Engine had to be replaced cost consumers money that they should not have been required to pay.  And, even after Samsung purported to say that only the less expensive Light Tunnel needs to be replaced, Samsung's authorized servicers have continued to insist on replacing the Light Engine, at far greater cost to unsuspecting consumers.

57.     The acts, practices, misrepresentations and omissions by Samsung described above constitute unconscionable, unlawful, fraudulent and deceptive commercial practices. Samsung knew that its Televisions contained a characteristic defect, but was determined to benefit economically and, nonetheless, distributed these defective products to unsuspecting consumers.  Samsung's conduct presents a continuing threat to plaintiffs, Class members, and the general public in that Samsung has refused to publicly acknowledge the Defect, correct Samsung's wrongdoing, and provide compensation for the damages it has caused to consumers.

As a result of this conduct, plaintiffs and the Class purchased the defective Televisions, which are now of greatly diminished value and in need of repairs at additional cost, and have suffered an ascertainable loss.

### SECOND CAUSE OF ACTION
**Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.)**
**(Unconscionable Commercial Practice)**
**(Against All Defendants)**

58.     Each of the above allegations is incorporated herein.

59.     After the Defect began to manifest itself, Samsung denied liability to plaintiffs based on an alleged "warranty disclaimer."

60.     The "warranty disclaimer" is void and illusory in that Samsung provides no "warranty" whatsoever.  Samsung knew about the existence of the Defect when it placed the Televisions into the stream of commerce.  Samsung knew that the Defect often would not manifest itself until after the one-year warranty expired, in effect avoiding any and all liability for its defective product.

61.     Samsung's conduct as stated herein constitutes substantial aggravating circumstances in addition to its breach of warranty, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

### THIRD CAUSE OF ACTION
**Unfair and Deceptive Acts and Practices Under the Various State Laws in Which Class**
**Members Reside, Stated in the Alternative to the First and Second Causes of Action, if the**
**Court Eventually Determines that the Laws of a Consumers' Residence – and Not those of**
**the State of New Jersey -- Apply to Samsung's Wrongful, Unfair, and Deceptive Acts**
**(Against All Defendants)**

62.     Each of the above allegations is incorporated herein.

63.     Plaintiffs assert that since Samsung's wrongful acts and practices were directed and disseminated from its headquarters in Ridgefield Park, New Jersey, that the choice of law rules in this Circuit render it likely that the New Jersey Consumer Fraud Act will be applied to

the claims of class members nationwide.  As the choice of law question cannot be conclusively addressed at this point in the litigation, plaintiffs state the following alternative causes of action under the laws of the States of residence of class members, if it is later determined by the Court that the choice of law rules require the application of these State laws, and not those of New Jersey.

64.     The practices discussed above, including but not limited to Samsung's knowing and undisclosed sale of Televisions containing the Defect, Samsung's improper and unconscionable warranty practices, as well as Samsung's false denials that the Televisions contain the Defect, all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the state consumer protection statutes listed in ¶¶ 65-112, below.

65.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.  In particular, Alaska law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.  (b) The terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts: . . . (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (8) advertising goods or services with intent not to sell them as advertised; . . . (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; . . . (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged; . . . (15) knowingly making false or misleading statements

concerning the need for parts, replacement, or repair service . . . ." Alaska Stat. § 45.50.471. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Alaska Stat. Ann. 45.50.471.

66. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1521, et seq. Particularly, Arizona law prohibits "The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-1522(A). By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ariz. Rev. Stat. Ann. § 44-1522(A).

67. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. § 4-88-101, et seq. In particular, Arkansas law provides, "(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; . . . (3) Advertising the goods or services with the intent not to sell them as advertised; . . . (10) Engaging in any other

21

unconscionable, false, or deceptive act or practice in business, commerce, or trade. . . ." Ark Code Ann. § 4-88-107. Arkansas law further provides, "When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark Code Ann. § 4-88-108. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ark Code Ann. §§ 4-88-107, 4-88-108.

68.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. Particularly, California law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. California law also provides that, "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised. . . ." Cal. Civ. Code § 1770(a). By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be

obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1770(a).

69.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colo. Rev. Stat. § 6-1-101, et seq. In particular, Colorado law provides, "(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . . ". Colo. Rev. Stat. § 6-1-105. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Colo. Rev. Stat. § 6-1-105.

70.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110a, et seq.  In particular, Connecticut law provides that "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when

23

sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Conn. Gen. Stat. § 42-110b.

71.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, § 2511, et seq.  In particular, Delaware law provides that "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."  Del. Code Ann. tit. 6, § 2513(a).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Del. Code Ann. tit. 6, § 2513(a).

72.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, et seq.  Particularly, District of Columbia law provides, "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:  (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead; . . . (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered . . . ."  D.C. Code § 28-

3904.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated D.C. Code § 28-3904.

73.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.  In particular, Florida law provides, "(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204(1).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Fla. Stat. § 501.204(1).

74.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §10-1-390, et seq.  In particular, Georgia law provides, "(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised".  Ga. Code Ann. § 10-1-372.  Georgia law further provides, "(a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are

25

declared unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised . . . . " Ga. Code Ann. § 10-1-393(a).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ga. Code Ann. §§ 10-1-372, 10-1-393(a).

75.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, et seq.  In particular, Hawaii law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2.  Hawaii law further provides, "(a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Haw. Rev. Stat. § 481A-3.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Haw. Rev. Stat. §§ 480-2, 481A-3.

76.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code Ann. § 48-601, et seq.  In particular, Idaho law provides, "The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer . . . ." Idaho Code Ann. § 48-603.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Idaho Code Ann. § 48-603.

77.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1, et seq.  In particular, Illinois law provides, "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, [footnote] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . . ." 815 Ill. Comp. Stat. 505/2.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the

27

Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated 815 Ill. Comp. Stat. 505/2.

78.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code § 24-5-0.5-1, et seq.  In particular, Indiana law provides, "(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts: (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.  (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not. . . . (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it." Ind. Code § 24-5-0.5-3.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ind. Code § 24-5-0.5-3.

79.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623, et seq.  In particular, Kansas law provides, "(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) Representations made knowingly or with reason to know that: (A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or

quantities that they do not have; . . . (D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; . . . (F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . ."  Kan. Stat. Ann. § 50-626.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Kan. Stat. Ann. § 50-626.

80.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. Ann. § 367.110, et seq.  In particular, Kentucky law provides, "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.  (2) For the purposes of this section, unfair shall be construed to mean unconscionable." Ky. Rev. Stat. Ann. § 367.170.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ky. Rev. Stat. Ann. § 367.170.

81.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. Ann. § 51:1401, et seq.  Particularly, Louisiana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct

of any trade or commerce are hereby declared unlawful." La. Rev. Stat. Ann. § 51:1405A.  By
selling the Televisions to consumers with the representation that they would accurately and
properly render video programs, without revealing that the Televisions were defective when sold
and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due
to defendants' improper warranty practices and false and misleading statements to consumers
about the existence of, and fix for, the Defect, defendants violated La. Rev. Stat. Ann. §
51:1405A.

82.    Defendants have engaged in unfair competition or unfair or deceptive acts or
practices in violation of 5 Me. Rev. Stat. Ann. tit. 5, § 205-A, et seq.  In particular, Maine law
provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct
of any trade or commerce are declared unlawful." Me. Rev. Stat. Ann. tit. 5, § 207.  By selling
the Televisions to consumers with the representation that they would accurately and properly
render video programs, without revealing that the Televisions were defective when sold and that
their screens would eventually be obscured, in whole or in part, by the Shadow, and due to
defendants' improper warranty practices and false and misleading statements to consumers about
the existence of, and fix for, the Defect, defendants violated Me. Rev. Stat. Ann. tit. 5, § 207.

83.    Defendants have engaged in unfair competition or unfair or deceptive acts or
practices in violation of Md. Code Ann., Com. Law § 13-101, et seq.  In particular, Maryland
law provides, "Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or
misleading oral or written statement, visual description, or other representation of any kind
which has the capacity, tendency, or effect of deceiving or misleading consumers; (2)
Representation that: (i) Consumer goods, consumer realty, or consumer services have a
sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they
do not have; . . . or . . . (iv) Consumer goods, consumer realty, or consumer services are of a
particular standard, quality, grade, style, or model which they are not; (3) Failure to state a
material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of
consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent

them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . . ." Md. Code Ann., Com. Law § 13-301. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Md. Code Ann., Com. Law § 13-301.

84.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 1, et seq. In particular, Massachusetts law provides "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Mass. Gen. Laws ch. 93A, § 2.

85.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws § 445.901, et seq. In particular, Michigan law provides, "(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: . . . (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. . . . (g)

Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. . . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. . . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Mich. Comp. Laws § 445.903.

86.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8.31, et seq. In particular, Minnesota law provides, "A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, sub. 1. Minnesota law further provides, "Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly

or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such." Minn. Stat. § 325F.67. Minnesota law provides as well that, "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable . . . ." Minn. Stat. § 325F.69, sub. 1. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Minn. Stat. §§ 325D.44, sub. 1, 325F.67 and 325F.69, sub. 1.

87.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.010, et seq. In particular Missouri law provides, "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . , in or from the state of Missouri, is declared to be an unlawful practice. . . ." Mo. Rev. Stat. § 407.020.1. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions

33

defective when sold and that their screens would eventually be obscured, in whole or in by the Shadow, and due to defendants' improper warranty practices and false and ading statements to consumers about the existence of, and fix for, the Defect, defendants ted Mo. Rev. Stat. § 407.020.1.

88.    Defendants have engaged in unfair competition or unfair or deceptive acts or ices in violation of Mont. Code Ann. § 30-14-101, et seq.  In particular, Montana law des, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct ıy trade or commerce are unlawful."  Mont. Code Ann. § 30-14-103.  By selling the ʌisions to consumers with the representation that they would accurately and properly render ) programs, without revealing that the Televisions were defective when sold and that their ns would eventually be obscured, in whole or in part, by the Shadow, and due to dants' improper warranty practices and false and misleading statements to consumers about ɔistence of, and fix for, the Defect, defendants violated Mont. Code Ann. § 30-14-103.

89.    Defendants have engaged in unfair competition or unfair or deceptive acts or ices in violation of Neb. Rev. Stat. § 59-1601, et seq.  In particular, Nebraska law provides, air methods of competition and unfair or deceptive acts or practices in the conduct of any or commerce shall be unlawful."  Neb. Rev. Stat. § 59-1602.  Nebraska law further des, "(a) A person engages in a deceptive trade practice when, in the course of his or her ess, vocation, or occupation, he or she: . . . (5) Represents that goods or services have ɔorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not . . . ; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (c) ʌsection does not affect unfair trade practices otherwise actionable at common law or under statutes of this state."  Neb. Rev. Stat. § 87-302.  By selling the Televisions to consumers ʌhe representation that they would accurately and properly render video programs, without ʌling that the Televisions were defective when sold and that their screens would eventually ʌscured, in whole or in part, by the Shadow, and due to defendants' improper warranty

34

w

pa

m

vi


pr

pr

ot

To

vi

so

do

th


pr

"t

tr

pr

bu

sp

ha

Th

ot

wi

re

be

practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Neb. Rev. Stat. §§ 59-1602, 87-302.

90.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.  Nevada law provides in particular, "A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith. . . . 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he knows or should know that they are of another standard, quality, grade, style or model. . . . 9. Advertises goods or services with intent not to sell or lease them as advertised. . . . 15. Knowingly makes any other false representation in a transaction. . . ." Nev. Rev. Stat. § 598.0915.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Nev. Rev. Stat. § 598.0915.

91.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. § 358-A:1, et seq.  Particularly, New Hampshire law provides, "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . IX. Advertising goods or services

35

with intent not to sell them as advertised . . . ." N.H. Rev. Stat. Ann. § 358-A:2. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.H. Rev. Stat. Ann. § 358-A:2.

92.    Defendants have engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of N.J.S.A. § 56:8-1, et seq. Particularly, New Jersey law provides, "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ." N.J.S.A. § 56:8-2. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.J.S.A. § 56:8-2.

93.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, et seq. In particular, New Mexico law provides, "D. 'unfair or deceptive trade practice' means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any

36

person and includes: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another; . . . (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive; . . . E. 'unconscionable trade practice' means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services . . . : (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. §57-12-2.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.M. Stat. §57-12-2.

94.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.  In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.Y. Gen. Bus. Law § 349.

95.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.  In particular, North Carolina law

provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.C. Gen. Stat. § 75-1.1(a).

96.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq.  In particular, North Dakota law provides, "The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice."  N.D. Cent. Code § 51-15-02.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated N.D. Cent. Code § 51-15-02.

97.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code Ann. § 1345.01, et seq.  In particular, Ohio law provides, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."  Ohio Rev. Code Ann. § 1345.02(a).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by

38

the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Ohio Rev. Code Ann. § 1345.02(a).

98.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. tit. 15, § 751, et seq.   In particular, Oklahoma law provides, "As used in the Oklahoma Consumer Protection Act: . . . 13. 'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person.  Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; 14. 'Unfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. . . ."  Okla. Stat. tit. 15, § 752.  Oklahoma law further provides, "A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the course of the person's business, the person: . . . 5. Makes a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction . . . ; . . . 7. Represents, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; 8. Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title . . . . "  Okla. Stat. tit. 15, § 753.  It continues to provide, "A. A person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . 7. Represents that goods or services are a particular standard, quality, or grade, or that goods are a particular style or model, if they are another; . . . C. The deceptive trade practices listed in this section are in addition to

39

and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." Okla. Stat. tit. 78, § 53. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Okla. Stat. tits. 15, §§ 752 and 753, 78, § 53.

99.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq. In particular, Oregon law provides, "A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person: (1) Employs any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods or services . . . ." Or. Rev. Stat. § 646.607. Oregon law further provides, "(1) A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following: . . . (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have . . . . (g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if they are of another. . . . (t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity. (u) Engages in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Or. Rev. Stat. §§ 646.607, 646.608.

100.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. Ann. tit. 73, § 201-1, et seq.  In particular, Pennsylvania law provides, "(4) 'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean any one or more of the following: . . . (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  Pa. Stat. Ann. tit. 73, § 201-2.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Pa. Stat. Ann. tit. 73, § 201-2.

101.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, et seq.  In particular, Rhode Island law provides, "As used in this chapter: . . . (6) 'Unfair methods of competition and unfair or deceptive acts or practices' means any one or more of the following: (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding; (xiii) Engaging in any act or practice that is unfair or deceptive to the consumer; (xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect; . . . (xvii) Advertising claims concerning safety, performance,

and comparative price unless the advertiser, upon request by any person, the consumer council, or the attorney general, makes available documentation substantiating the validity of the claim . . . ." R.I. Gen. Laws § 6-13.1-1.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated R.I. Gen. Laws § 6-13.1-1.

102.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. § 39-5-10, et seq.  In particular, South Carolina law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. . . ." S.C. Code Ann. § 39-5-20.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated S.C. Code Ann. § 39-5-20.

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, et seq.  In particular, South Dakota law provides, "It is a deceptive act or practice for any person to: (1)  Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby." S. D. Codified Laws § 37-24-6(1).  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants'

42

improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated S. D. Codified Laws § 37-24-6(1).

104.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, et seq.  In particular, Tennessee law provides "(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; . . . (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person . . . ."  Tenn. Code Ann. § 47-18-104.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Tenn. Code Ann. § 47-18-104.

105.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. § 17.41, et seq.  In particular, Texas law provides, "(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code. (b) Except as provided in

Subsection (d) of this section, the term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ; . . . (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertising goods or services with intent not to sell them as advertised; . . . (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed . . . ." Tex. Bus. & Com. Code Ann. § 17.46.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Tex. Bus. & Com. Code Ann. § 17.46.

106.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.  In particular, Utah law provides, "(1) A deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction.  (2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; . . .(e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; . . . (j) . . . (ii) fails to honor a warranty or a particular warranty term . . . ."  Utah Code Ann. § 13-11-4.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without

44

revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Utah Code Ann. § 13-11-4.

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 2451, et seq.  In particular, Vermont law provides, "(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."  Vt. Stat. Ann. tit. 9, § 2453.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Vt. Stat. Ann. tit. 9, § 2453.

108.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. § 59.1-196, et seq.  In particular, Virginia law provides "A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; 7. Advertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned, or that are 'seconds,' irregulars, imperfects, or 'not first class,' without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are 'seconds,' irregulars, imperfects or 'not first class'; 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . . 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . ."  Va. Code Ann. § 59.1-200.  By selling the

45

Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Va. Code Ann. § 59.1-200.

109.   Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 19.86.010, et seq.  Particularly, Washington law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."   Wash. Rev. Code § 19.86.020.  By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Wash. Rev. Code § 19.86.020.

110.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.  In particular, West Virginia law provides "(7) 'Unfair methods of competition and unfair or deceptive acts or practices' means and includes, but is not limited to, any one or more of the following: . . . (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; . . . (I) Advertising goods or services with intent not to sell them as advertised; . . . (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; . . . (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission,

in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." W. Va. Code § 46A-6-102. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated W. Va. Code § 46A-6-102.

111.   Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wis. Stat. § 100.20, et seq. Particularly, Wisconsin law provides, "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited." Wis. Stat. § 100.20(1). By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Wis. Stat. § 100.20(1).

112.   Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wyo. Stat. Ann. § 40-12-101, et seq. In particular, Wyoming law provides, "(a) A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly: (i) Represents that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; . . . (iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not; . . . (x) Advertises merchandise with intent not to sell it as advertised; . . . or . . . (xv) Engages in unfair or deceptive acts or practices." Wyo. Stat. Ann. § 40-12-105. By selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that

their screens would eventually be obscured, in whole or in part, by the Shadow, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, defendants violated Wyo. Stat. Ann. § 40-12-105.

113.    Plaintiffs and members of the Class have been injured by reason of Samsung's unfair and deceptive acts and practices in regard to its manufacturing, marketing, sale, and warranty practices relating to the defective Televisions.  These injuries are of the type that the above State consumer protection statutes were designed to prevent, and are the direct result of Samsung's unlawful conduct.

**FOURTH CAUSE OF ACTION**
**Violation of Magnuson-Moss Act (15 U.S.C. §2301, et seq.)**
**(Against All Defendants)**

114.    Each of the above allegations is incorporated herein.

115.    Plaintiffs and the Class are consumers as defined in 15 U.S.C. §2301(3).

116.    Defendants are suppliers and warrantors as defined in 15 U.S.C. §2301(4)(5).

117.    The Televisions are consumer products as defined in 15 U.S.C. §2301(6).

118.    By reason of Samsung's breach of its implied warranties and express written warranties stating that the Televisions would operate properly, were free from material defects, and that Samsung would repair or replace any such defects, defendants have violated the statutory rights due the plaintiffs and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq., thereby damaging plaintiffs and the Class.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(Against All Defendants)**

119.    Each of the above allegations is incorporated herein.

120.    The defective Televisions are goods as defined by the New Jersey Uniform Commercial Code (U.C.C.), Title 12A:1-101 et seq.  The provisions of the New Jersey U.C.C. are the same or similar to the U.C.C. in all states containing Class members.

48

121.    Samsung as the designers, manufacturers, distributors and sellers expressly warranted that the Televisions being sold to the general public were not inherently defective.

122.    Samsung's descriptions of the Televisions became part of the bases of the bargains between consumers and Samsung, creating express warranties that the product purchased by plaintiffs and the Class would conform to Samsung's representations.

123.    Samsung's affirmations of fact and/or promises relating to the Televisions created express warranties that the products purchased by plaintiffs and the Class would operate properly and without defects, and would therefore portray video without extraneous artifacts which would impair the viewing of the video program.  Samsung breached the express warranty in that the Televisions did not conform to the promises or affirmations of fact made by Samsung to the plaintiffs and members of the Class.

124.    Further, Samsung breached their agreement and express warranty by allowing misrepresentations to be made and/or omitting information concerning the true condition of the Televisions with the intent of making plaintiffs and the members of the Class enter into agreements to purchase the Televisions.   Samsung's express warranty did not include a conspicuous statement about the defective Light Tunnels and the unusual early failure of the Light Tunnel.

125.    If plaintiffs and the members of the Class had known the true facts, they would not have purchased the Televisions or paid as much as they did for the Televisions.

126.    Samsung's limits on their express warranty are unenforceable as they knowingly sold a defective product without conspicuously informing consumers about the defect, and, as such, their express warranty was unconscionable.  As a result, plaintiffs and the members of the Class did not receive the goods expressly warranted by Samsung.

127.    The time limits contained in Samsung's extended written limited warranties were also unconscionable and grossly inadequate to protect the plaintiffs and the members of the Class.  Among other things, plaintiffs and the members of the Class had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored

Samsung over members of the Class; a gross disparity in bargaining power existed as between Samsung and Class members; and Samsung knew or should have known that the Televisions were defective at the time of sale and would fail well before their useful lives, thereby rendering the time limitations insufficient, inadequate, and unconscionable.

128.    As a result of the foregoing, plaintiffs and the Class have suffered damages.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranties
### (Against All Defendants)

129.    Each of the above allegations is incorporated herein.

130.    Samsung's affirmations of fact and/or promises relating to the Televisions created implied warranties that the products purchased by plaintiffs and the Class would operate properly and without defects, and would therefore portray video without extraneous artifacts that would impair the viewing of the video program.

131.    Alternatively, Samsung's descriptions of the Televisions became part of the bases of the bargains between consumers and Samsung, creating implied warranties that the product purchased by plaintiffs and the Class would conform to Samsung's representations.

132.    In fact, the products purchased by plaintiffs and the Class did not so conform.

133.    Samsung also breached the warranty of merchantability implied in that the goods could not pass without objection in the trade, the goods were not of fair average quality within the description and/or were unfit for their intended and ordinary purpose in that they were defective.  Samsung cannot disclaim this implied warranty as they knowingly sold a defective product.

134.    Samsung also breached the implied warranty of fitness for a particular purpose. Based upon plaintiffs' and the Class' skill and judgment and implied warranties of fitness for a particular purpose, plaintiffs and Class members unknowingly purchased defective Televisions for personal or business use.

135.    The Televisions were defective when they left the exclusive control of Samsung. Samsung knew that the Televisions would be used without additional tests for defects. The Televisions were defective and unfit for their intended purpose and plaintiffs and the members of the Class did not receive the goods as warranted.

136.    As a result of the foregoing, plaintiffs and the Class have suffered damages.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

137.    Each of the above allegations is incorporated herein.

138.    Defendants breached its contract with plaintiffs and the members of the Class and by not performing according to their obligations under the applicable law and the contract.

139.    At all times pertinent hereto, plaintiffs and the members of the Class fully performed and satisfied their obligations under these contracts and agreements.

140.    Defendants breached their contract with plaintiffs and the members of the Class by violating the implied covenant of good faith and fair dealing inherent in such contracts and agreements.

141.    By virtue thereof, as a direct and proximate cause of defendants' breach of contract, plaintiffs and the members of the Class have suffered damages.

## EIGHTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

142.    Each of the above allegations is incorporated herein.

143.    Plaintiffs and the members of the Class entered into agreements to purchase Televisions from the defendants.

144.   Those agreements were subject to the implied covenants that defendants would conduct their business with plaintiffs and the members of the Class in good faith and would deal fairly with plaintiffs and the members of the Class.

145.   Defendants breached those implied covenants by selling plaintiffs and Class members Televisions that were inherently defective in bad faith with knowledge that the contract and/or warranties were unconscionable and by abusing its discretion in its performance of the contract by intentionally subjecting plaintiffs and the members of the Class to a risk, to wit, the Defect, beyond one plaintiffs and the members of the Class would have contemplated at the time of purchasing the Televisions.

146.   Defendants breached those implied covenants by not providing terms in the contract and/or warranty that conspicuously stated to the plaintiffs and Class members that the Televisions would develop and display the Shadow and the Televisions would not be able to display a picture free from extraneous artifacts.

147.   As a direct and proximate result of defendants' breach of those implied covenants to plaintiffs and Class members, plaintiffs and Class members have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment as follows:

A.   Declaring that this action is properly maintainable as a class action and certifying the named plaintiffs as the Class representative;

B.   Awarding damages to plaintiffs and the Class for Samsung's breach of warranty;

C.   Awarding restitution and disgorgement as a result of Samsung's unfair business practices, untrue and misleading advertising and unjust enrichment, and unconscionable conduct;

D.   Awarding plaintiffs and the Class compensatory damages, treble damages and attorney's fees for Samsung's consumer fraud, pursuant to N.J.S.A. 56:8-19 or such compensatory, punitive or multiple damages or other relief as may be available under any other applicable State laws proscribing unfair acts and practices referenced above which may ultimately be determined to be applicable in this matter;

E.      Requiring Samsung to inform the public of the Defect possessed by its Televisions and enjoining Samsung from refusing to perform its warranty obligations;

F.      Awarding pre- and post-judgment interest;

G.      Awarding attorney's fees, expenses, and costs; and

H.      Providing such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  June 19, 2008

LITE DEPALMA GREENBERG & RIVAS, LLC

_/s/ Bruce D. Greenberg_____
By: Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center
12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

ROBERT I. LAX & ASSOCIATES
Robert I. Lax
380 Lexington Avenue, Suite 3100
New York, NY 10168
Telephone: (212) 818-9150
Facsimile:  (212) 208-4309

LANGE & KONCIUS, LLP
Joseph J.M. Lange
Jeffrey A. Koncius
222 North Sepulveda Blvd., Suite 1560
El Segundo, CA 90245
Telephone: (310) 414-1880
Facsimile:  (310) 414-1882

LAW OFFICE OF DANIEL SOBELSOHN
Daniel E. Sobelsohn
1875 Century Park West
Los Angeles, CA 90067
Tel: (310) 461-1333
Fax: (310) 861-5205

BARON & HERSKOWITZ
Jon Herskowitz
9100 S. Dadeland Boulevard, Suite 1000
Miami, FL 33156
Telephone: (305) 670-0101
Facsimile:  (305) 670-2393
*Attorneys for Plaintiffs*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Plaintiffs by their attorneys, hereby certify that the matter in controversy is also the subject of the following actions: <u>McCalley v. Samsung Electronics America, Inc., et al.</u>, Civil Action No. 07-2141(JAG); <u>Jinks v. Samsung Electronics America, Inc., et al.</u>, Civil Action No. 07-5092(JAG); <u>Menendez v. Samsung Electronics America, Inc., et al.</u>, Civil Action No. 07-5457(JAG); and <u>Goldberg v. Samsung Electronics America, Inc., et al.</u>, Civil Action No. 07-5278(JAG), all of which are pending in the United State District Court for the District of New Jersey and are to be consolidated with this action herein.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  June 19, 2008                 LITE DEPALMA GREENBERG & RIVAS LLC


  /s/ Bruce D. Greenberg
By: Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center
12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

Exhibit

A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PHIL McCALLEY, on behalf of himself and
all others similarly situated,

               Plaintiff,

       v.

SAMSUNG ELECTRONICS AMERICA,
INC., and SAMSUNG ELECTRONICS CO.
LTD.,

             Defendants.

CIVIL ACTION NO. 2:07-cv-02141-JAG-MCA

## SECOND DECLARATION OF JEONGHWAN ON

I, JeongHwan On, declare as follows:

1.    I am currently a Senior Engineering Manager in the Customer Service Department of Samsung Electronics America, Inc. ("SEA"), in Ridgefield Park, New Jersey. I began my career with Samsung in December 1984 as an engineer in Korea. I have held my current position since May 1992. My general duties in this position include the evaluation of the design, safety, and quality of new products and the ongoing analysis of products that have already been sold to our customers. I am the person within SEA who is charged with the responsibility of investigating all issues related to quality and safety.

2.    I have conducted an investigation of the facts stated in this declaration, and I have personal knowledge of the facts stated here.

3.    Samsung DLP televisions consist of six major components, each characterized by a discrete function: a power source (to receive and convert electricity for use); a printed circuit board ("PCB") (which receives and processes audio and video signals from an external source, such as an antenna or DVD player); a light engine (to convert the processed video signal into a projected image); a screen (to display the projected image); speakers (to express the processed audio signal); and a cabinet (to house the other components).

4.    The light engine in a Samsung DLP television is an assemblage of parts that takes an electrical signal and turns it into a high-resolution image projected on a screen. In simplified terms, a light engine operates as follows. Light is generated by an extremely bright white bulb, and then is passed through a "light tunnel." The light tunnel contains

multiple mirrors that distribute the raw white light evenly in a rectangular pattern. This even white light passes through a translucent, rotating "color wheel" that separates the light into colors. The various beams of even, colored light are then passed to the "digital micromirror device" panel ("DMD panel"), which (using the processed signal from the PCB) configures the colored light into an image that is projected on the screen. Images are generated and projected many times per second.

5. An entire light engine is approximately 16 inches long, 12 inches wide, and 8 inches high. A photograph of a light engine and light-tunnel assembly removed from a Samsung television is attached as Exhibit A. A diagram of a light engine is attached as Exhibit B. An entire light engine, when packaged for storage or shipment, is approximately the size of a standard file box, and takes up roughly 2.3 cubic feet. Stacked in Samsung's facilities for storage, light engines that are awaiting either refurbishment or sale currently take up over 4,500 square feet of floor space—36,000 cubic feet. It costs Samsung approximately $600 to acquire and refurbish a used light engine.

6. The light tunnel is a comparatively tiny component within the light engine. A light tunnel consists of four small mirrors, glued together at the edges to form a "tunnel" shape. The light tunnel is contained in a tiny housing that is roughly cylindrical. The light-tunnel housing's largest dimension (length) is only 1½ inches. The light tunnel and its housing are in turn contained in a light-tunnel assembly that contains the light tunnel and an amplifying lens. The light tunnel assembly also is approximately cylindrical and is just over 4 inches long. A photograph of a light-tunnel housing and a light-tunnel assembly is attached as Exhibit C. A new light tunnel costs Samsung less than $12.

7. Samsung engineers test for ways to increase the longevity of televisions and their component parts. As part these efforts, Samsung has progressively improved the light tunnels in its DLP televisions. In this process of refinement and improvement, Samsung has learned why some of the earliest DLP televisions it manufactured may eventually exhibit the "shadow" problem alleged in the complaint. The bonding agent in the light tunnel that holds together the multiple mirrors sometimes fails after a period of use, and one or more mirrors come loose, partially obscuring the light passing through the light tunnel. In the HL-R, HL-S, and now HL-T series televisions, Samsung has progressively improved the bonding agent as well as the light tunnel housing (thus reducing the strain on the bond under high heat).

8. Light engines have serial numbers, and Samsung has records showing which light engines have, to date, been determined to have been returned for refurbishing due to a light-tunnel problem.

9. Samsung does not repair DLP televisions. To fulfill its obligations to repair DLP televisions under warranty, and to ensure that high-quality repair services are available for televisions out of warranty, Samsung contracts with independent third parties who repair Samsung televisions. These third parties (most of whom are designated "Authorized Service Centers" and are referred to collectively here as "authorized servicers") are contractually required to meet specified technical and customer-service

standards.  There are approximately 3,000 authorized servicers in the United States, and in any given month, Samsung transacts business with 700 to 1,000 of these.

10.     Samsung provides DLP television parts to authorized servicers—for both in-warranty and out-of-warranty repairs—through its customer service division, which has a parts facility in the Los Angeles area.  This facility, called the Global Parts Center of America (GPCA), sells and ships parts directly to authorized servicers.  GPCA also sells parts to third-party companies for resale to others (such as to non-authorized servicers).

11.     Used light engines are sufficiently valuable that refurbishment is economical.  Usually the various components of a light engine do not all fail simultaneously.

12.     Although a light engine consists of multiple discrete parts that operate in various degrees of independence from each other, it is not necessarily easy for an authorized servicer to replace only a single component within the light engine.  Thus, Samsung initially discouraged authorized servicers from replacing light tunnels because DLP technology was relatively new and servicers were not yet sufficiently expert to replace only the light tunnel (in a dust-free environment) and recalibrate the light engine without charging excessively for labor and without risking significant collateral damage to other parts.  In time, Samsung changed this instruction.  Since approximately June 2007, Samsung has advised its authorized servicers that in a television that exhibits the shadow problem but otherwise functions correctly, they should replace only the light tunnel.

13.     Samsung buys broken light engines from authorized servicers, refurbishes them so they are in like-new condition, and then sells them as replacement parts.  When an authorized servicer buys a replacement light engine from Samsung, it can receive a credit from Samsung for returning a used light engine.  Samsung buys used light engines for the sole purpose of refurbishing and reselling them.  It cannot economically refurbish light tunnels and therefore does not repurchase used light tunnels separately.

14.     When a new model of light engine is manufactured for a DLP model year, Samsung manufactures slightly more light engines than it needs to build the new televisions, creating a small stock of new light engines for sale as replacement parts.  As this stock is exchanged for light engines to be refurbished, Samsung soon sells exclusively refurbished light engines.

15.     Each model of Samsung DLP television is designated with a three-letter prefix denoting the model year, or "series."  The model year that was introduced beginning in 2005 is the HL-R series.  In 2006, the HL-S series was introduced.  In 2007, the HL-T series was introduced.  There are multiple models in each series, each model having the same basic design but varying in screen size and features (such as picture-in-picture, number and type of signal inputs, etc.).  Models within a given series sometimes, but not always, vary in the light engine used.  Thus, a particular light engine may be compatible with more than one model television within the same model year (i.e., the light engine in a particular model from the HL-R series is sometimes interchangeable with the light engine used in one or more models from that same series).  But an HL-R light engine is never

3

compatible with HL-S televisions, and HL-S light engines are not compatible with HL-T televisions.

16.    Currently, Samsung has no stock of new light engines for any HL-R or HL-S model televisions. All its light-engine stock for these discontinued models is refurbished or awaiting refurbishment. It would be prohibitively expensive for Samsung to procure materials, arrange suppliers, and reconfigure a factory to produce new light engines for discontinued models. The per-unit cost of such production would likely exceed the manufacturing cost of an entire television of a model currently in production. Therefore, without sales from Samsung's stock of refurbished light engines, HL-R and HL-S series televisions in need of a replacement light engine cannot be repaired. An order requiring Samsung to preserve light engines indefinitely will cripple this important function of its customer service division.

17.    For HL-R and HL-S series televisions, Samsung currently has approximately 7,500 light engines that either have been refurbished or are awaiting refurbishment. The light engines are currently stored at Samsung facilities in Los Angeles, California and Tijuana, Mexico. An estimated 2,000 light engines currently in storage have had light tunnel problems.

18.    If Samsung is not allowed to refurbish or sell light engines that previously exhibited a light tunnel problem, Samsung will probably run out of two of the four models of HL-R light engines entirely within six to eight months.

19.    Samsung has preserved the light engine and light tunnel removed from the plaintiff's television, as well as exemplars of all similar components used in HL-R and HL-S televisions.

20.    It is well-known, public information that refurbishment of such expensive parts as light engines is common within the electronics industry.

21.    Exhibit A is an unaltered photograph, taken by me, of a light engine; a light tunnel assembly is also in the photograph near the top edge. Exhibit B is a diagram showing the various parts of a light engine, including the light tunnel. Exhibit C is an unaltered photograph, taken by me, of a light-tunnel housing (top) and a light-tunnel assembly (bottom). Exhibit D is an unaltered photograph, taken by me on January 9, 2008, of packaged light engines in storage and awaiting refurbishment at Samsung's GPCA facility in Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 11, 2008

_____
Jeonghwan On

# EXHIBIT A

**1. Light-tunnel assembly (top)**



**2. Entire light engine (bottom)**

# EXHIBIT B



**Exploded diagram of a light engine
(showing, *e.g.*, light tunnel inside)**

# EXHIBIT C

**1. Light tunnel contained in light-tunnel housing (top)**



**2. Light-tunnel assembly, containing light-tunnel housing and light tunnel (bottom)**

# EXHIBIT D



**Light engines in storage, awaiting refurbishment, at GPCA in Los Angeles, California, on January 9, 2008**