**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ  07102
(973) 623-3000
bgreenberg@litedepalma.com
mtarantino@litedepalma.com

**Additional Counsel On Signature Page**

*Plaintiffs' Counsel Executive Committee*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
————————————————————— x
                                :
IN RE SAMSUNG DLP TELEVISION CLASS  :   Civil Action No. 07-2141 (GEB)(MCA)
ACTION LITIGATION               :
                                :   Hearing Date:  August 4, 2010
                                :
THIS DOCUMENT RELATES TO:       :
                                :
                                :
ALL ACTIONS                     :
                                :
                                :
                                :
————————————————————— x
```

---

## PLAINTIFFS' BRIEF IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

---

243433 v1

## TABLE ON CONTENTS

TABLE OF AUTHORITIES.................................................................iii

BACKGROUND ............................................................................ 2

   I.  The Alleged Shadow Effect and the Claims Asserted in this Action.................. 2

   II.  Investigation and Discovery Relating to the Alleged Shadow Effect.................. 3

   III.  Defendants' Two Motions To Dismiss Plaintiffs' Complaint ............................ 4

   IV.  The Settlement ...................................................................... 5

      (i)  Warranty Extension ........................................................... 5

      (ii)  Warranty Fulfillment ......................................................... 5

      (iii)Cash Reimbursement of Expenses for Shadow Effect Repair ...................... 5

      (iv)Reimbursement of Certain Expenses Associated with Exchange
          Provided by Samsung ........................................................ 6

ARGUMENT ............................................................................... 7

   I.  Notice of the Settlement Was Properly Given to the Class ............................ 7

   II.  The Settlement Should Be Approved ............................................... 8

      A.  The Settlement Is Fair Reasonable and Adequate.......................... 9

         1.  The Complexity, Expense and Likely Duration of the Litigation............. 10

         2.  The Reaction of the Class to the Settlement ........................... 11

            a.  The Objections to the Settlement Are *de Minimis* in Number
              and Unpersuasive........................................................ 12

               i.  Objections to the General Structure or Amount of Compensation. 13

               ii.  Objections to the Scope of the Class............................. 14

         3.  The Stage of Proceedings and the Amount of Discovery Completed ....... 14

         4.  The Risks of Establishing Liability and Damages ................................ 15

         5.  The Risk of Maintaining the Class Action Through Trial ...................... 16

         6.  The Ability of Samsung to Withstand a Greater Judgment ......................... 17

7.  The Range of Reasonableness of the Settlement in Light of the
    Best Possible Recovery, and in Light of Litigation Risks ........................... 17

8.  The Additional Third Circuit Factors Are Satisfied as Well ...................... 18

9.  The Settlement Is Presumed to Be Fair ................................................ 19

III.  Certification of the Settlement Class is Appropriate ............................................ 20

IV.  The Fee to Be Paid by Defendants Is Reasonable Under Both the
     Lodestar and Percentage Methods .................................................................... 20

    A.  Negotiated Fee Agreements Paid By a Defendant Rather than from a
        Common Fund Provide the Maximum Benefit to the Class and Are
        Regularly Encouraged and Approved by Courts ......................................... 20

    B.  Counsel's Lodestar Greatly Exceeds the Fees South Herein ....................... 22

    C.  The Lodestar Approach ............................................................................. 23

    D.  The Percentage Method ............................................................................ 25

        1.  The size of the fund created and the number of persons benefited ........ 26

        2.  Absence of Substantial Objections to Settlement and/or Fees
            Requested by Counsel ......................................................................... 27

        3.  The Skill and Efficiency of the Attorneys Involved .............................. 27

        4.  The Complexity, Magnitude and Risks of the Action and the
            Contingent Nature of the Fee ............................................................. 27

        5.  Fee Awards in Similar Cases ................................................................ 28

    E.  The Requested Fee Award Is Reasonable ................................................. 28

V.  Plaintiffs' Counsel Are Entitled to Be Reimbursed for their Reasonable
    Litigation Expenses ........................................................................................ 29

VI.  The Incentive Awards Are Reasonable and Should Be Approved ...................... 29

CONCLUSION ......................................................................................................... 30

## TABLE OF AUTHORITIES

Cases

Amchem Prods v. Windsor,
    521 U.S. 591 (1997)...................................................................................................22

Anixter v. Home-Stake Prod. Co.,
    77 F.3d 1215 (10th Cir. 1996) ....................................................................................25

Backman v. Polaroid Corp.,
    910 F.2d 10 (1st Cir. 1990) .........................................................................................25

Boeing Co. v. Van Gemert,
    444 U.S. 472 (1980).....................................................................................................25

Bowling v. Pfizer, Inc.,
    922 F. Supp. 1261 (S.D. Ohio) ...................................................................................21

Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Company,
    ), 513 F. Supp. 2d 322 (E.D. Pa. 2007)..............................................................24, 29

Careccio v. BMW of North America LLC, Case No.,
    No. 08-26192010, 2010 WL 1752347 (D.N.J. Apr. 29, 2010)....................................26

Court Awarded Attorney Fees,
    108 F.R.D. 237 (October 8, 1985) .........................................................................21, 22

DeBoer v. Mellon Mortgage Co.,
    64 F.3d 1171 (8th Cir. 1995) .......................................................................................21

Deposit Guar. Nat'l Bank,
    445 U.S. 326 (1980).....................................................................................................22

EEOC v. McDonnell Douglas Corp.,
    894 F. Supp. 1329 (E.D. Mo. 1995).............................................................................25

Ehrheart v. Verizon Wireless,
    No. 08-4323, 2010 WL 2365867 (3d Cir. June 15, 2010) ............................................8

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974).......................................................................................................8

Evans v. Jeff D.,
    475 U.S. 717 (1986)................................................................................................21, 22

Girsh v. Jepson,
    521 F.2d 153 (3d Cir. 1975) ..........................................................................................9

Gunter v. Ridgewood Energy Corp.,
   223 F.3d 190 (3d Cir. 2000) ................................................................26

Hensley v. Eckerhart,
   461 U.S. 424 (1983) .........................................................21, 22, 23, 27

In re Aetna Inc. Securities Litig.,
   MDL No, 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................8

In re AT&T Corp.,
   455 F.3d 160 (3d. Cir. 2006) ................................................18, 23, 29

In re Baby Food Antitrust Litig.,
   166 F.3d 112 (3d Cir. 1999) ................................................................15

In re Community Bank of Northern Virginia,
   418 F.3d 277 (3rd Cir. 2005) ..............................................................19

In re Computron Software, Inc.,
   6 F. Supp. 2d 313 (D.N.J. 1998) .........................................................27

In re Continental Ill. Sec. Litig.,
   962 F.2d 566 (7th Cir. 1992) ..............................................................21

In re Datatec Sys., Inc.,
   No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...................16

In re Fine Paper Litig.,
   632 F.2d 1081 (3d Cir. 1980) .............................................................14

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
   55 F.3d 768 (3d Cir. 1995) ...........................................................Passim

In re General Pub. Utils. Sec. Litig.,
   1983 U.S. Dist. LEXIS 11641 (D.N.J. Nov. 16, 1983) ..........................12

In re Gulf Oil/Cities Serv. Tender Offer Litig.,
   142 F.R.D. 588 (S.D.N.Y. 1992) .........................................................27

In re Ikon Office Solutions, Inc., Secs. Litig.,
   194 F.R.D. 166 (E.D.Pa. 2000) ..........................................................11

In re LG/Zenith Rear Projection Television Class Action Litig.,
   No. 06-5609, 2009 WL 455513 (D.N.J. Feb. 18, 2009) ..........................2

In re Prudential Ins. Co. of Am. Sales Practices Litig.,
   177 F.R.D. 216 (D.N.J. 1997) ..............................................................8

In re Prudential Ins. Co. of Am. Sales Practices Litig.,
    962 F.Supp. 450 (D.N.J. 1997).................................................. 9, 11, 13, 18

In re Prudential Ins. Co. of Am. Sales Practices Litig.,
    148 F.3d 283 (3d Cir. 1998)..........................................................Passim

In re Rite Aid Corp. Sec. Litig.,
    396 F.3d 294 (3d Cir. 2005) ......................................................... 12, 23

In re SmithKline Beckman,
    751 F. Supp. at 533. ............................................................................20

In re Sony SXRD Rear Projection Television Class Action Litig.,
    No. 06-cv-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008)...............28

In re Warfarin Sodium Antitrust Litig.,
    391 F.3d 516 (3d Cir. 2004) ........................................................ 17, 19

In re Warner Communications Secur. Litig.,
    618 F. Supp. 735 (S.D.N.Y. 1985)......................................................  28

Lachance v. Harrington,
    965 F. Supp. 630 (E.D. Pa 1997)...........................................................8

M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,
    671 F. Supp. 819 (D. Mass. 1987).......................................................21

Mashburn v. Nat'l Healthcare, Inc.,
    684 F. Supp. 679 (M.D.Ala. 1988).......................................................20

McCoy v. Health Net, Inc.,
    569 F. Supp. 2d 448 (D.N.J. 2008)......................................................29

McGee v. Continental Tire North Am., No.,
    06-6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009) .........................Passim

Mullane v. Cent. Hanover Bank & Trust,
    339 U.S. 306 (1950)...............................................................................8

Officers for Justice v. Civil Serv. Comm'n of San Francisco,
    688 F.2d 615 (9th Cir. 1982)...............................................................13

Oh v. AT&T Corp.,
    225 F.R.D. 142 (D.N.J. 2004) ..............................................................29

Robbins v. Koger Props., Inc.,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................25

Slomovics v. All For A Dollar, Inc.,
 906 F. Supp. 146 (E.D.N.Y. 1995) ...................................................................20

Stoetzner v. U.S. Steel Corp.,
 897 F.2d 115 (3d Cir. 1990) .............................................................................12

Varacallo v. Massachusetts Mut. Life Ins. Co.,
 226 F.R.D. 205 (D.N.J. 2005) ....................................................................Passim

Washington v. Phila. Cnty. Ct. Com. Pl.,
 89 F.3d 1031 (3d Cir. 1996) .............................................................................23

Weiss v. Mercedes-Benz,
 899 F. Supp. 1297 (D.N.J. 1995) ......................................................................10

Williams v. First Nat'l Bank,
 216 U.S. 582 (1910) ...........................................................................................8

Williams v. MGM-Pathe Commc'ns Co.,
 129 F.3d 1026 (9th Cir. 1997) ..........................................................................21

Statutes

15 U.S.C. § 2301, et seq. .........................................................................................4

N.J.S.A. 56:8-2 .......................................................................................................4

Rules

Fed. R. Civ. P. 8(a) .................................................................................................4

Fed. R. Civ. P.  9(b) ................................................................................................4

Fed. R. Civ. P. 12(b)(1) ...........................................................................................4

Fed. R. Civ. P.  12(b)(6) ..........................................................................................4

On May 20, 2010, this Court entered an order preliminarily approving the Stipulation and Agreement of Compromise and Settlement, dated April 22, 2010 (the "Agreement"),[1] and set a hearing on August 4, 2010, to consider any objections to the proposed settlement of this action (the "Settlement") as well as the application of Class Counsel for an award of fees and reimbursement of expenses. Plaintiffs submit this brief in support of their motion for an order granting final approval of the Settlement, and their application for an award of attorneys' fees and reimbursement of expenses for Plaintiffs' counsel.[2]

This action seeks relief on behalf of approximately 1,450,000 consumers in the United States who purchased certain Samsung DLP televisions (the "Televisions") sold by Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. (collectively, "Defendants" or "Samsung"). The Televisions are alleged to possess the "Shadow Effect," which causes a video anomaly that consumers have come to call "the Shadow." The Shadow appears as a linear darkened strip running down the side of the Television's viewing screen. Left unrepaired, the Shadow grows to cover more of the Television's screen. Correcting the alleged Shadow Effect requires the replacement of the Light Tunnel -- a repair that can cost a significant percentage of the price most consumers paid for these televisions. Because the Shadow typically manifested itself after the one-year factory warranty expired, Defendants would not repair it under warranty and in some instances charged consumers for "upgrading" Televisions. This action therefore alleged that consumers were left with essentially useless Televisions that could only be repaired by a trained service technician at a significant cost.

---

[1] An executed copy of the Agreement was attached as Ex. "A" to the Declaration of Bruce D. Greenberg, dated April 23, 2010, submitted in support of the Motion for Preliminary Approval (Doc. No. 89-2). That document is respectfully incorporated herein by reference.

[2] Concurrently filed with this Memorandum of Law are (i) the Declaration of Bruce D. Greenberg ("Greenberg Dec.") and its attached Compendium of Plaintiffs' Counsels' Declarations in Support of an Award of Attorneys' Fees and Reimbursement of Expenses (Exhibit I); and (ii) a Proposed Final Order and Judgment (Exhibit II).

The Settlement provides full "benefit of the bargain" relief to each Class member while eliminating the many risks and delays associated with continued litigation. In sum, the Settlement provides an extended and enhanced warranty that requires Samsung to (i) reimburse consumers for any out-of-pocket expenses they incurred in repairing the Shadow or exchanging an affected Television prior to this Settlement; (ii) maintain an information webpage with links from the Televisions' model pages and a dedicated toll-free telephone number for consumers to obtain a telephone diagnosis of the Shadow; (iii) provide in-home warranty repairs under the warranty extension within an accelerated 15-day period; (iv) create and train a team of technical representatives to handle calls under the warranty extension to diagnose any necessary repairs and take appropriate action; and (v) under certain circumstances, exchange the Television for a television of equal or better specifications. The Settlement is similar to a settlement that Judge Linares approved last year in another case that alleged defects in televisions. *In re LG/Zenith Rear Projection Television Class Action Litig.*, No. 06-5609, 2009 WL 455513 (D.N.J. Feb. 18, 2009).

After dissemination of notice of the Settlement pursuant to the Preliminary Approval Order, as of July 30, 2010, fewer than ten objections to the Settlement have been filed—none of which took issue with the award of attorneys' fees and expenses sought herein. (Greenberg Dec. at ¶¶326.) Far more Class members have submitted letters to the Court in support of the Settlement and have contacted Class Counsel to praise the excellent result obtained and urge its prompt approval so that they can get their Televisions repaired without further delay. (*Id.* at ¶3.) Accordingly, Plaintiffs seek entry of an Order and Judgment finding that notice to the Class was proper; certifying the settlement class; approving the Settlement as fair and reasonable; and awarding Class Counsel the negotiated fees and expenses to be paid by Defendants.

## BACKGROUND

**I.      The Alleged Shadow Effect and the Claims Asserted in this Action.**

This consolidated action alleges that Defendants knew or should have known of the Shadow Effect at the time Samsung placed the Televisions into the stream of commerce, but

243433 v1                                                             2

nonetheless marketed these Televisions as high-end videophile devices, with a high definition picture far superior to that provided by a standard television. Plaintiffs further allege that Samsung compounded its improper sale of the defective Televisions by refusing to honor its obligation to repair the Shadow Effect without cost to members of the Class. Multiple putative nationwide class actions were filed in the United States District Court for the District of New Jersey and on July 14, 2008, these cases were consolidated by order of this Court (the "Federal Action") and a Consolidated Class Action Complaint was filed (the "Consolidated Complaint"). A separate action on behalf of an asserted New Jersey class was filed in the Superior Court of New Jersey, Bergen County (the "State Action").[3]

## II.     Investigation and Discovery Relating to the Alleged Shadow Effect.

Class Counsel filed this case only after a thorough investigation of the factual underpinnings of the controversy, and agreed to resolve it only after they fully understood the experiences of consumers using the Televisions and the nature of the Shadow Effect. (Greenberg Dec. at ¶4.) Class Counsel, through consultations with class members, consulting experts, and their own expertise from work in other cases involving defective televisions, believed that the alleged Shadow Effect was likely due to a fault in the Televisions' Light Engine, which is the principal video component that causes the video signal to be displayed as a picture on the viewing screen. It was later learned that the problem actually arose from a component part of the Light Engine called the Light Tunnel. The Shadow Effect is believed to be caused by a manufacturing defect in the Televisions' Light Tunnel in which mirrors partially detach from the apparatus resulting in a partial blockage of the light path.

---

[3]  The Consolidated Complaint sought relief on behalf of a nationwide class for violations of New Jersey's Consumer Fraud Act (Counts I and II), unfair and deceptive trade practices acts of 45 different states (Count III), Magnuson-Moss Warranty Act (Count IV), breach of express warranty (Count V), breach of implied warranties (Count VI), breach of contract (Count VII), and breach of the implied covenant of good faith and fair dealing (Count VIII). The State Action claims are identical in all material respects to the claims asserted in the Federal Action.

After exchanging their initial disclosures with Defendants, Plaintiffs engaged in discovery focusing on the design of the Light Tunnel and the alleged Shadow Effect, identifying all Television models containing the alleged Defect, and any countermeasures developed by Defendants to correct it.  In response to Plaintiffs' discovery requests, Defendants produced approximately 82,000 pages containing complex engineering documents concerning the alleged Shadow Effect, the testing of the Televisions, and Defendants' countermeasures.  Many of these documents were in Korean, and Plaintiffs had them reviewed by Korean speaking personnel.

**III.    Defendants' Two Motions to Dismiss Plaintiffs' Complaint.**

On August 10, 2007, Defendants filed a motion to dismiss the first-filed complaint, that of Plaintiff Phil McCalley, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  By order dated March 31, 2008, Judge Greenaway denied Defendants' 12(b)(1) motion and Defendants' 12(b)(6) motion as it related to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.  All other claims were dismissed without prejudice.

On June 26, 2008, Plaintiffs repleaded their claims in the Consolidated Complaint.  On February 12, 2009, Defendants moved to dismiss the Consolidated Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and failure to plead fraud with the requisite particularity pursuant to Fed. R. Civ. P. 9(b), and to dismiss the counts for breach of contract and breach of the implied covenant of good faith and fair dealing for failure to comply with the notice pleading requirement of Fed. R. Civ. P. 8(a).  By order dated October 27, 2009, Chief Judge Brown denied Defendants' motion with respect to Plaintiffs' New Jersey Consumer Fraud Act, Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*), and breach of express and implied warranties claims.  Judge Brown granted Defendants' motion without prejudice in all other respects.

**IV.    The Settlement.**

Beginning as early as 2007, approximately eight months after Plaintiff Phil McCalley's Complaint was filed, the parties had intermittent discussions about settlement.  They later

243433 v1                                                         4

engaged retired Judge Orlofsky as a mediator to facilitate a settlement. Those efforts did not

succeed. Thereafter, the parties had several settlement conferences with the State Action judge.

Those efforts too were not initially fruitful. Lines of communication between the parties were

kept open, and after the voluminous document discovery and a number of depositions, the parties

agreed on settlement terms.

The Settlement provides full "benefit of the bargain" relief to each Class member.

Specifically, the Settlement provides:

**(i)    Warranty Extension.**
Samsung will extend to Class members its manufacturer's limited warranty with in-home
service on the Televisions with respect to the correction of the Shadow Effect for (a) a
period ending October 22, 2011 for HL-R, HL-S, and certain models of HL-T Series
Televisions  or (b) a period ending April 22, 2011 for HL-P Series Televisions  (the
"Warranty Extension"). All other terms of Samsung's standard limited warranty shall
continue to apply, and Samsung shall be under no obligation under this Settlement
Agreement to provide warranty service for any fault with the Televisions other than to
correct the Shadow Effect if it manifests in Class members' Televisions.

**(ii)    Warranty Fulfillment.**
For the duration of the Warranty Extension period, Samsung will maintain an information
webpage with links from the Televisions' model pages on the support section of
www.samsung.com, and a dedicated toll-free telephone number for consumers to obtain a
telephone diagnosis of the Shadow Effect and, if necessary, an in-home warranty repair
under the Warranty Extension. Samsung shall create and train a team of technical
representatives to handle calls under the Warranty Extension, to diagnose any necessary
repairs, arrange as necessary for parts shipments, and arrange in-home service calls. For
those customers contacting Samsung through the toll-free telephone line, in the event that
(a) Samsung is unable to ship a replacement part within fifteen (15) days following the
initial telephone diagnosis or (b) after obtaining a repair of the Shadow Effect in the
Television if it requires another such repair during the Warranty Extension; Samsung will
offer the Class member the option of either (i) another such repair or (ii) an exchange of
the Television for a refurbished DLP television of the same screen size and model or, if
no such refurbished DLP televisions are available in Samsung's stock, Samsung will
replace the Class member's Television with a DLP television (of the same or later model
as the customer's television), plasma or LCD television of a value substantially
equivalent to the value of such a refurbished DLP television. Notwithstanding the
foregoing, nothing in the Settlement Agreement shall in any way alter any obligation of
Samsung to maintain spare parts under any applicable law or regulation.

**(iii)    Cash Reimbursement of Expenses for Shadow Effect Repair.**
Samsung will reimburse any Class member for out-of-pocket expenses incurred by that
Class member prior to April 23, 2010 to remedy the Shadow Effect that is the subject of
the Consolidated Amended Complaint in connection with (a) the replacement of a light
engine or component thereof to correct the Shadow Effect, or (b) shipping a Television to
an authorized service center for such a repair, or (c) an ISF Calibration of a Television
after the installation of a light engine in connection with a repair of the Shadow Effect.
Samsung shall have no obligation to reimburse any such expenses unless the Class

member submits (i) a valid proof of claim and (ii) a legible copy of a receipt showing the amount paid for shipping and/or repair and/or ISF calibration charge. Claims for reimbursement under this provision must be submitted within 180 days following the Settlement Effective Date. Samsung will mail checks within six (6) weeks of receipt of a valid claim or the Settlement Effective Date, whichever is later.

**(iv)   Reimbursement of Certain Expenses Associated with Exchange Provided by Samsung.**

Samsung will reimburse Class member(s) who paid any money to Samsung prior to April 23, 2010, in connection with Samsung's customer service staff accommodating an exchange for a replacement television in the same series. Samsung shall refund such amounts automatically to those qualifying according to Samsung's own records, by mailing checks within six (6) weeks after the Settlement Effective Date.

(Agreement at ¶¶ 2-5.) Additionally, subject to Court approval, Samsung has agreed to pay Class Counsel's fees and expenses in an amount not to exceed $950,000.00. The payment of this negotiated fee by Samsung will not reduce the Settlement benefit to Class members. Finally, each Class representative will receive as an award for their assistance in this litigation and participation in discovery, a current model 50-inch Samsung plasma or LCD television of a model to be chosen by Samsung.

Under the Settlement, all expenses relating to notice and administration of the Settlement were paid by Defendants. That program consisted of: (1) Samsung sent a direct written notice by email and/or U.S. Post to for whom it had obtained contact information from its registered database. Class Counsel also sent emails to all known owners of the Televisions; (2) Samsung built and continues to host a website, www.samsung.com/us/dlptvsettlement (the "Settlement Website") to provide information on the Settlement, information on the Warranty Extension, and the claims process. The Settlement Website will be live for the duration of the Warranty Extension. Further, Samsung placed a link to the Settlement Website from the "News and Alerts" section on the Samsung USA Product Support page until the Settlement Effective Date; and (3) Defendants caused a Summary Notice of Settlement to be published in USA Today and sent notice to governmental agencies as required by CAFA.

The Settlement is an outstanding result for the Class as it requires Samsung to provide the prompt in home repair of all Televisions manifesting the Shadow Effect at no cost to the consumer and results in the extension and enhancement of the warranty relating to the Shadow

243433 v1

Effect. The Settlement not only extends the manufacturer's warranty on this component -- assuring consumers that they will receive the working Televisions they bargained for without additional cost to them -- but further compels Samsung to fulfill these new warranty obligations under tight time limits to ensure that Class members promptly receive a working television. If Samsung cannot provide a replacement part within the time limits imposed by the Settlement, it is required to simply replace the television with one of substantially the same size.

The Settlement additionally transfers the risk of the Shadow returning from the consumer back to Samsung. The Settlement provides that if a Television requires an additional repair relating to the Shadow Effect prior to the expiration of the warranty extension, Samsung is required to replace that Television with an equivalent or better television. The Settlement will also result in significant cash payment to many members of the Class as well, as it requires Samsung to refund consumers, dollar for dollar, all repair expenses as well as certain other expenses they incurred as a result of the Shadow.

To the extent possible, the need for Class members to submit a claim form to receive the Settlement benefits has been dispensed with. The free repair during the warranty extension period can be arranged by means of calling a dedicated toll-free telephone number. Class members who are entitled to monetary refunds can obtain reimbursement for the cost of that repair by submitting a simple proof of claim that documents their expenditure. In sum, the parties have structured this Settlement so that there are minimal steps that consumers must take to receive its benefits. (Greenberg Dec. at ¶21.)

## ARGUMENT

### I.      Notice of the Settlement Was Properly Given to the Class.

Pursuant to this Court's Preliminary Approval Order, Class members have received proper notice of the pendency of this class action and the Settlement so that they have had an adequate opportunity to object or exclude themselves. Defendants disseminated the "short form" and "long form" notices and implemented the notice program approved by this Court in the Preliminary Approval Order. As described in the concurrently filed On Declaration, Samsung

sent 225,527 "long form" notices by first class mail and 190,976 by email. The "short form"
publication notice was placed in USA Today on July 2, 2010. In addition, Samsung created the
Settlement Website which contains copies of various case-related documents as well as a toll-
free number to call for more information.

 The methods used to disseminate the notice in this case provide the best notice
practicable under the circumstances and satisfy the requirements of Rule 23(c)(2). *See Lachance
v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa 1997) ("In order to satisfy due process, notice to
class members must be 'reasonably calculated under all the circumstances, to apprise interested
parties of the pendency of the action and afford them an opportunity and present their
objections.'") (*quoting Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314-15 (1950));
*see also In re Aetna Inc. Securities Litig.*, MDL No, 1219, 2001 WL 20928, *5 (E.D. Pa. Jan. 4,
2001) (mailing, publication, and internet notice sufficient); *In re Prudential Ins. Co. of Am. Sales
Practices Litig.*, 177 F.R.D. 216, 233 (D.N.J. 1997) (mailing and publication sufficient).[4] The
best notice practicable, consistent with the requirements of due process, has clearly been satisfied
in this case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974).

## II. The Settlement Should Be Approved.

 It is well-settled that "compromises of disputed claims are favored by the courts."
*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). This is especially true in complex class
action litigation. *See Ehrheart v. Verizon Wireless*, No. 08-4323, 2010 WL 2365867, *3 (3d Cir.
June 15, 2010) ("The strong judicial policy in favor of class action settlement contemplates a
circumscribed role for the district courts in settlement review and approval proceedings."); *In re
Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)
("The law favors settlement, particularly in class actions and other complex cases where

---

[4]Actual notice is not required. *Prudential*, 177 F.R.D. at 231-32 ("Courts have consistently
recognized that due process does not require that every class member receive actual notice so
long as the court reasonably selected a means likely to apprise interested parties [....] Similarly,
Rule 23 does not require the parties to exhaust every conceivable method of identifying the
individual class members").

243433 v1           8

substantial judicial resources can be conserved by avoiding formal litigation."). In reviewing a settlement, the Third Circuit has counseled that "[t]he evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* at 806. "Thus, the issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement." *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 534 (D.N.J. 1997).

As the Settlement satisfies the criteria for final approval as articulated by the Third Circuit, discussed below, Plaintiffs respectfully submit that the Court should find the Settlement fair, reasonable and adequate, and warranting approval.

### A.    The Settlement Is Fair Reasonable and Adequate.

The fairness of the settlement is determined by consideration of the nine factors articulated in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).

Those factors are:

1) the complexity, expense and likely duration of the litigation;
2) the reaction of the class to the settlement;
3) the stage of the proceedings and the amount of discovery completed;
4) the risks of establishing liability;
5) the risks of establishing damages;
6) the risks of maintaining a class action through trial;
7) the ability of the defendants to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Id.* at 157. The "decision of whether to approve a proposed settlement of a class action [or the like] is left to the sound discretion of the district court." *Id.* at 156.

The Settlement easily satisfies the applicable criteria.

1.    **The Complexity, Expense and Likely Duration of the Litigation**

This first *Girsh* "factor is 'intended to capture 'the probable costs, in both time and

money, of continued litigation.'" *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 205,

236 (D.N.J. 2005) (quoting *GM*, 55 F.3d at 811). Plaintiffs estimate that a trial of this case

would have taken at least one month and involved testimony of numerous Samsung engineers

through interpreters as well as testimony by several expert witnesses concerning such

complicated subjects as the physics of electromagnetic radiation which comprises the spectrum

of light and the complex materials chemistry surrounding adhesives. If this case were to have

proceeded, it might not have been completed until years after the benefits would be made

available to consumers under this Settlement. The expense of such a trial and the use of both

judicial resources and the resources of the parties would have been substantial. (Greenberg Dec.

at ¶22.) Full litigation through trial and appeals would be expensive, lengthy, and risky. *See,

e.g., Weiss v. Mercedes-Benz*, 899 F. Supp. 1297, 1300 (D.N.J. 1995) ("When parties negotiate a

settlement they have far greater control of their destiny than when a matter is submitted to a

jury.") The considerable expense of further litigation could potentially reduce the Class recovery

and provide a disincentive to later settlement. The length of the litigation process would further

disadvantage the Class members who want to obtain repairs for their Televisions.

Samsung asserted numerous arguments seeking the dismissal of the case and would have

aggressively challenged class certification if the case were to be further litigated. The future

course of the litigation undoubtedly would have proven to be equally complex, expensive, and

time-consuming. In assessing the merits of the Settlement, Class Counsel carefully considered

the wide-ranging factual and legal hurdles as well as the risks that Plaintiffs would have faced if

they had continued to prosecute the action through trial and appeals. Although they remained

confident in their ultimate ability to be awarded damages for the conduct complained of, Class

Counsel were aware that certain of the legal and factual defenses vigorously asserted by

Samsung had some possibility of success which could lead to severe mitigation of the amount of

damages that might ultimately be awarded to the Class or even dismissal of the case. The

resulting uncertainty, and the uncertainty inherent in all complex litigation, made the outcome of the case less than assured, especially when weighed against the substantial, tangible, immediate benefits conferred by the Settlement, which approach a "best case" scenario after trial. (Greenberg Dec. at ¶23.)  Whatever the outcome at trial, further appeals would be expected and would extend the case, thereby delaying any recovery to the Class.  *See, e.g., In re Ikon Office Solutions, Inc., Secs. Litig.*, 194 F.R.D. 166, 179 (E.D.Pa. 2000) ("Finally, the extremely large sums of money at issue almost guarantee that any outcome, whether by summary judgment or trial, would be appealed.  This factor thus weighs in favor of the proposed settlement.")  Accordingly, this potential for a continued lengthy, expensive and complex litigation weighs heavily in favor of the Settlement.  *See Prudential*, 962 F. Supp. at 536; *McGee v. Continental Tire North Am.*, No. 06-6234, 2009 WL 539893, at *4 (D.N.J. Mar. 4, 2009) (Brown, Chief J.) (". . . it is clear that litigation of this matter would be time-consuming, uncertain and expensive and that approval of the Settlement would secure a 'prompt and efficient resolution of the Class' claims permitting substantial recovery without further litigation, delay, expense or uncertainty.' [Citation.]").

## 2.    The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a factor to be weighed in considering its adequacy as "[t]his factor attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998).  The fairness of the Settlement is confirmed by the fact that it has been received with the overwhelming approval of the Class, with far more letters in support of the Settlement having been submitted by Class members than objections.  (Greenberg Dec. at ¶3.)  In fact, the Court has received 22 letters in support – not including additional letters and notes written to Class Counsel – and fewer than ten objections to the Settlement were received—using the most expansive view of what an "objection" consists of.  The paucity of objections and expressions of gratitude by class members is compelling evidence that the settlement is fair and adequate.  *See, e.g., In re General Pub. Utils. Sec. Litig.*, 1983 U.S. Dist. LEXIS 11641, at *22 (D.N.J. Nov. 16,

1983) ("The lack of objection from the members of the class is one of the most important reasons leading the court to the conclusion that the settlement should be approved."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) ("only" 29 objections out of a 281 member class "strongly favors settlement."). Indeed, as the Third Circuit said in *In re Rite Aid Corp. Sec. Litig.*, "such a low level of objection is a rare phenomenon." 396 F.3d 294, 305 (3d Cir. 2005) (internal quotation marks and citation omitted); *see also, In re Ins. Brokerage Antitrust Litig.*, MDL 1663, 2009 WL 411877, at *5 (D.N.J. Feb. 17, 2009) *amended,* MDL 1663, 2009 WL 2255513 (D.N.J. July 24, 2009) *aff'd sub nom. In re Ins. Brokerage Antitrust Litig. (MDL 1663),* 09-3521, 2010 WL 779786 (3d Cir. Mar. 9, 2010).

Finally, not a single class member opted out. "Such a small number of Opt Outs in relation to the size of the Class also strongly favors approval of the Settlement." *McGee v. Continental Tire North America,* Civ. No. 06-6234, 2009 WL 539893, *4.

### a. The Objections to the Settlement Are *de Minimis* in Number and Unpersuasive

Notification of this Settlement was provided to each of the federal authorities and state attorney general offices required to be notified of such under the Class Action Fairness Act so that they could object if they believed the Settlement should not be approved. None of these governmental entities has expressed any objection or reservation regarding this Settlement. In addition, the receipt of so few objections from consumers, relating to any aspect of the Settlement, is *de minimis* by any measure. Moreover, while these consumers express their frustration and disappointment regarding their previous experiences with the Televisions, it must be noted that these experiences do not indicate that the compromise reached herein is legally deficient.

The objections from Class members generally fall into one of two categories: (i) some Objectors assert generally that they are unsatisfied with the quantum of relief or structure of the Settlement, and assert that it does not compensate Class members – or punish Samsung – adequately (*see, e.g.*, Cox, Doc. No. 107); and (ii) some Objectors assert that the Settlement should encompass different model Televisions, or cover problems other than the Shadow Effect

which formed the subject matter of this case (*see, e.g.*, Brooks, Doc. No. 103; Focke, Doc. No. 97; Freeland, Doc. No. 117; Hester, Doc. No. 113; Ward, Doc. No. 115).  As set forth below, none of the objections provide any grounds to reject the Settlement.

### i. Objections to the General Structure or Amount of Compensation

Objections have been made to the general structure of the settlement, preferring for example that complete refunds be provided (*see, e.g.*, Brooks, Doc. No. 103 ["I strongly feel that all Class members should receive either a new LCD or a cash refund . . ."]; Hallows, Doc. No. 120 ["I think the reimbursement should be REGARDLESS of what brand a consumer bought for replacement."]).  The apparent preference of the Objectors for a different result however in no way establishes that the Settlement is unfair or not in the best interests of Class members. Moreover, these desires do not represent a reasonable compromise in light of the strength of the case or Samsung's defenses to it, or take into consideration the immediate benefits made available by the Settlement.

There is a succinct, dispositive response to such objections: the mere fact that alternative or potentially more favorable settlement terms can be postulated in the abstract affords no basis to reject a fair and adequate settlement achieved through adversarial litigation and arduous, arm's-length negotiations.  As has been aptly observed, "The evaluating court must . . . guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential*, 962 F.Supp. at 534 (quoting *GM*, 55 F.3d at 806 (citations omitted)); *see also Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators").  While the

Settlement may fall short of perfection, that cannot be the standard. The essential fairness of the Settlement warrants its approval.

### ii. Objections to the Scope of the Class

Some of the objections received are not from members of the Class, but rather have been sent by consumers of different Samsung televisions than those included in this case (*see, e.g.,* Freeland, Doc. No. 117 ["I purchased a Samsung HL61A750"]) or those encountering different problems than the Shadow (*see e.g.,* Remball, Doc. No. 126 ["... the reason(s) for it to be no longer working properly has nothing to do with this so called Light Tunnel DLP Action ..."].; Focke, Doc. No. 97 ["As of the date of this letter, I still have spots on the screen the size of 'tennis' balls."]). These consumers would like to receive the same relief made available to Class members, to repair the problems they are experiencing with their own televisions. While Class Counsel takes no position on the merits of the respective complaints of these consumers, the televisions they own and/or their complaints are distinct from the Televisions owned by Class members, are not involved in this lawsuit, and whatever problems they have experienced are not related to the problems experienced by Class members. Those objectors who are not members of the Class have no standing to object. *See In re Fine Paper Litig.,* 632 F.2d 1081, 1087 (3d Cir. 1980). The failure of the Settlement to compensate non-Class members is not a ground for rejection of the Settlement.

Additionally, other Class members have other complaints about the Televisions which they claim remain unaddressed by the lawsuit. This litigation did not seek redress for such issues, but the Release contained in the Agreement is narrow, and does not compromise any such other claims – not related to the Shadow Effect – to the extent that any such claims exist. There is no requirement that a settlement address every possible issue with a product, and the Settlement in no way prejudices any Class member's ability to seek redress for such issues – to whatever extent they believe appropriate.

### 3.   The Stage of Proceedings and the Amount of Discovery Completed.

Given the extensive pre-settlement discovery conducted by Class Counsel, there can be

little doubt but that the Plaintiffs had an "adequate appreciation" of the case's merits when negotiating [the] settlement of the case. *Varacallo*, 226 F.R.D. at 238. Significant investigation and discovery of Samsung was undertaken by Class Counsel. As discussed above, Class Counsel consulted with experts and third parties concerning the Defect after reviewing tens of thousands of pages of documents produced by Samsung, many of which were written in Korean and had to be translated. *See, e.g., McGee*, 2009 WL 539893, at *5 (holding this factor "strongly" weighing in favor of settlement where "the parties have conducted extensive discovery, motion practice and expert consultation, which has enabled them to evaluate the merits of the case, the risk of litigation and the value of settlement."). Further, the resources to be expended if the other aspects of discovery were to be completed—including depositions in Asia--and eventually tried to a jury, would be substantial, and settlement now will avoid such time and effort on the part of both the parties and the Court. Accordingly the stage of the proceeding here is ideal for settlement.

      **4.**        **The Risks of Establishing Liability and Damages.**

      Although Plaintiffs strongly believe that their claims have merit, establishing Samsung's liability and damages to the entire Class at trial would by no means be guaranteed. Samsung has steadfastly denied liability and Class Counsel recognized that some of Samsung's arguments, both against class certification as well as the substance of the case, could have possibly proved meritorious. The favorable outcome of the choice of law issues – a critical issue in a multi-state class case – can never be predicted with certainty. If class certification were granted, Plaintiffs would have anticipated additional dispositive motions by Samsung had the case proceeded toward trial. (Greenberg Dec. at ¶24.) The risk of losing such a case can never be discounted. *See, e.g., In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999); *see also McGee*, 2009 WL 539893, at *5 (finding this factor weighed "strongly in favor of settlement" where "case involve[d] difficult factual and legal issues which would have translated into protracted litigation and accumulating expenses, in both time and money.")

The many other risks that Plaintiffs and the Class would have faced at trial alone (assuming that Plaintiffs defeated any other dispositive motions that Samsung might have filed after the close of discovery) include:

(i)   The risk that evidentiary rulings would preclude Plaintiffs from using certain proofs that they sought to offer;

(ii)  The risk that certain witnesses, particularly third-party witnesses, would not testify as anticipated, or would have their credibility undermined;

(iii) The risk that the jury would be more persuaded by Samsung's expert testimony than by that of Plaintiffs';

(iv)  The risk that the jury would find that Samsung was not in breach of any warranty that was made; and

(v)   The risk that the jury would find that Samsung's conduct was not deceptive or otherwise violative of the consumer fraud statutes, or that the Class is unable to prove damages under those statutes.

(Greenberg Dec. at ¶25); *In re Ins. Brokerage Antitrust Litig.*, 2009 WL 4118977, at *6 (noting that "significant risk . . . in establishing both liability and damages" and likely "battle of experts" resulted in this factor weighing "strongly in favor of approval"); *In re Datatec Sys., Inc.*, No. 04-cv-525, 2007 WL 4225828, *4 (D.N.J. Nov. 28, 2007) (Brown, Chief J.) (risks relating to proving damages "are avoided by the settlement" and this weighs in favor of settlement.).

Although Plaintiffs strongly believe that their claims were and are meritorious, they recognize that they would have to surmount significant obstacles to achieve a recovery for the Class if the case were tried, with the distinct possibility that a judgment, even if favorable, might well provide Class members with fewer benefits than this Settlement. *Prudential*, 148 F.3d at 319. All cases involve some degree of risk and this case provides no exception to this rule. These numerous risks of litigation, as detailed above, certainly justify the Court's approval of a settlement that provides full benefit-of-the-bargain relief to the Class, as well as cash refunds for expenditures related to Class members having experienced the Defect. Accordingly, this factor also supports the fairness, reasonableness and adequacy of the Settlement.

### 5.   The Risk of Maintaining the Class Action Through Trial.

Samsung would no doubt have asserted that class certification would be inappropriate – particularly of the entire 50 State class -- and could have been expected to appeal any order

certifying the Class.  Class Counsel believes that a Class could be properly certified and maintainable throughout this litigation.  However, if the nationwide Class were not to be certified, or if the certified class were limited to residents of only certain jurisdictions, some or all of the Class members would only be able to obtain relief through individual actions that few, if any, Class members would have the inclination or resources to pursue.  In contrast, the Settlement guarantees that all consumer owners of the Televisions nationwide will receive relief. Indeed, "a risk of decertification supports settlement."  *Varacallo*, 226 F.R.D. at 239 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)).

### 6.   The Ability of Samsung to Withstand a Greater Judgment.

Samsung undoubtedly could withstand a greater judgment.  However, given that the Settlement provides the Class with full "benefit of the bargain" relief in the form of repair or replacement of the defective Televisions, a warranty extension, and reimbursement of repair costs previously incurred, this factor is not material in this case.  Where the settlement provides class members with full benefit-of-the-bargain relief, "the fact that [defendant] could afford to pay more does not mean that it is obligated to pay more than what the … class members are entitled to under the theories of liability that existed at the time the settlement was reached."  *In re Warfarin*, 391 F.3d at 538.  Indeed, the mere fact that a defendant could pay more does not militate against approval of a settlement when other factors all strongly support the settlement. *See id.*; *McGee*, 2009 WL 539893, at *6 (noting that "'to withhold approval of a settlement of this size because the defendants could withstand a greater judgment would make little sense.' [Citation.]").

### 7.   The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery, and in Light of Litigation Risks.

The "last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Warfarin*, 391 F.3d at 538.  As the Third Circuit has noted, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

inadequate and should be disapproved." *In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006) (internal quotation marks and citation omitted). Given the litigation risks discussed *supra*, this Settlement provides a substantial recovery. The Settlement provides the Class with full benefit of the bargain relief, as well as a refund for certain expenditures related to their having experienced the Shadow. Considering the best case scenario provided by the Settlement as well as the risks, uncertainty, and expense of continued litigation, the Settlement easily warrants approval under this factor. *Prudential I*, 962 F. Supp. at 540 (upholding settlement where "an individual's recovery exceeds the value of the best possible recovery discounted by the risks of litigation"); *McGee*, 2009 WL 539893, at *6 (noting that recovery for class which was expressly excluded by defendant's warranty and benefit to class not subject to reduction for class counsel's fees and costs weighed in favor of approval).

### 8.    The Additional Third Circuit Factors Are Satisfied as Well

In addition to the *Girsh* factors being satisfied as set out above, Plaintiffs also submit that any additional factors set out by the Third Circuit have been satisfied as well. *See In re AT&T*, 455 F.3d at 165 (noting that *Girsh* factors "do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement"). The *In re AT&T* Court set out those "other potentially relevant and appropriate factors" as follows: "[T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." *Id.* (quoting *Prudential*, 148 F.3d at 323).

Here, those factors that apply are all satisfied. The discovery adduced to date has allowed all involved to "assess the probable outcome of a trial," there is no difference between the results achieved for members of the Class, all members of the Class were duly given a right to opt out, the fees sought are reasonable (as set out, *infra*) and the claims process is inherently reasonable. Accordingly, these factors have been satisfied too and suggest approval by this Court.

> **9.      The Settlement Is Presumed to Be Fair.**

The Settlement is entitled to a presumption of fairness if the following are satisfied: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin*, 391 F.3d at 516. All of those factors are satisfied here. Further, "Courts examining settlement classes have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *G.M.*, 55 F.3d at 801." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005). Those factors are satisfied, as qualified and experienced counsel for both sides, all of whom are intimately familiar with this case, recommend final approval of the Settlement.

The settlement negotiations in this case were intense, extensive, hard-fought and conducted at arm's-length between experienced and skilled attorneys, and partially with the aid of a well-respected retired judge and a sitting judge. The active involvement of the judges in the negotiations ensured that the process was conducted at arm's-length. This factor also supports a finding that the Settlement is fair, reasonable and adequate and based on the above analysis of the relevant *Girsh* factors, Plaintiffs respectfully submit that the Court should find the Settlement to be worthy of approval. *See, e.g., McGee*, 2009 WL 539893, at *7 (noting as significant in summing of *Girsh* factors there that "The Settlement was reached after arm's-length negotiations between experienced, capable counsel after a significant amount of discovery.")

III.    **Certification of the Settlement Class Is Appropriate**

On May 20, 2010, this Court entered an Order preliminarily certifying the following

Settlement Class:

> All end user consumers in the United States who, prior to the date of the Settlement
> Agreement, purchased or received as gifts the following Samsung DLP televisions: HL-P
> Series (all models), HL-R Series (all models), HL-S Series (all models) and HL-T Series
> (models 4675SX/XAA, 5055S, 5055WX/XAA, 5075SX/XAA, 5675SX/XAA,
> 5076SX/XAA, 5676SX/XAA, 6156S, 6156WX/XAA, 6176SX/XAA, 6756WX/XAA,
> and 7288WX/XAA).

(Order at ¶ 3.)  As the Court has already found in granting Preliminary Approval – and for the

reasons additionally set forth in the Motion for Preliminary Approval (Mtn. at 12-19) -- this

Class meets all prerequisites for certification.  Circumstances have not changed, and no objection

has been filed as to the certification of such a Class.  As such, the Class should now be finally

certified under Rule 23.

IV.    **The Fee to Be Paid by Defendants Is Reasonable Under Both the Lodestar and
Percentage Methods.**

After extensive arm's length negotiations Samsung agreed to pay an award of fees and

expenses of up to $950,000.  (Greenberg Dec. at ¶26.)  As set forth below, this negotiated fee to

be paid by Samsung in no way diminishes the recovery for the Class and is reasonable under

both the lodestar and percentage methods.  Significantly, the reasonableness of the fee is

underscored by the fact that there has not been even a single objection to the amount of the fee

award being sought.  (Greenberg Dec. at ¶¶326.)  That fact alone strongly evidences that the fee

request is fair and reasonable.  *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 150

(E.D.N.Y. 1995); *see also In re SmithKline Beckman*, 751 F. Supp. at 533; *Mashburn v. Nat'l

Healthcare, Inc.*, 684 F. Supp. 679, 695 (M.D.Ala. 1988).

A.    **Negotiated Fee Agreements Paid By a Defendant Rather than from a
Common Fund Provide the Maximum Benefit to the Class and Are
Regularly Encouraged and Approved by Courts.**

Negotiated fee agreements between plaintiffs and defendants in consumer class actions

can provide a greater benefit to the class than payment from a common fund and are encouraged. *See, e.g., Evans v. Jeff D.*, 475 U.S. 717, 734-38 n.30 (1986) (indicating that parties may negotiate fees as well as settlement); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees"). Moreover, unlike a typical limited fund case, the fee amount here *will not* affect the Class recovery. Thus, a decision to reduce or even to refuse to award a fee, while beneficial to Samsung, will not result in any additional benefit to the Class. *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995), *cert. denied*, 517 U.S. 1156 (1996) (approving award of attorneys' fees where "[t]he vast majority of the fee will be paid by [the defendant] and will not come out of any class recovery"). Nor does a negotiated fee present the potential for adversity between counsel and the class that the traditional common fund fee may present, because the negotiated fee is being paid in addition to the class recovery. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277-78 (S.D. Ohio), *aff'd*, 102 F.3d 777 (6th Cir. 1996) (recognizing that divergence of interest can arise in traditional common fund situations). Accordingly, courts have endorsed such negotiated fee and expense awards.

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Court held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward which the parties should strive. "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fee).[5] The fee was negotiated under market conditions:

---

[5] In *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987), the settlement agreement between plaintiffs and defendant included a provision for the payment of attorneys' fees and expenses, payable by the defendant in addition to class-wide relief and subject to the court's approval. In approving this type of fee arrangement, the court stated: "The authorities encourage parties situated as those herein to agree as to the amount of counsel fees to be paid. Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, *ideally the parties will settle the amount of the fee between themselves*." (emphasis added) (*citing* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 269 (October 8, 1985) ("This type of

Class Counsel wished to maximize their fees, to compensate them, as courts encourage, for their risk, contingency, innovation, work, and creativity; Samsung's counsel had a direct interest in negotiating the lowest amount their client would be required to pay.

### B.    Counsel's Lodestar Greatly Exceeds the Fees Sought Herein

Class action litigation is intended to encourage the assertion of claims to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Deposit Guar. Nat'l Bank*, 445 U.S. 326, 338 (1980). So too, contingent-type fee arrangements play a vital role by giving a financial incentive to attorneys to serve as class counsel. *Id.* at 338 & n.9. The reality is that appropriate awards of attorneys' fees are absolutely necessary in order to ensure that consumer rights are protected and vindicated. As the Court explained in *Amchem Prods v. Windsor*, 521 U.S. 591, 617 (1997): "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

It is well-settled that counsel for prevailing parties are entitled to be compensated "for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431 (internal quotes and citation omitted). Here, Class Counsel's hourly rates are fully supported by their experience and reputation in handling complex class action litigation and are commensurate with the prevailing market rates in the tri-

---

offer, assuming the fee question is pursued in good faith, usefully separates the issues of settlement of the merits and resolution of the fees in a way that should minimize the defendant's reluctance to negotiate.")). As the Task Force reasoned: " [P]reventing agreements on fees at the time settlement of the merits is discussed. . . makes it difficult for the defendant to ascertain precisely what its liability will be, thereby eliminating the very certainty that makes settlement attractive to the defendant." *Id.* at 267 (cited in *Evans*, 475 U.S. at 738 n.28).

state area for attorneys of comparable experience and skill. Simply, far from receiving a multiple on their lodestar, Class Counsel will receive a negative multiplier on their total of their lodestar. Accordingly, this underscores the reasonableness of the requested fees herein.

### C.     The Lodestar Approach.

Class Counsel respectfully submit that the requested fee award is reasonable based on their lodestar. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433; *In re Rite Aid Corp.*, 396 F.3d at 305 ("The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services, based on the given geographical area, the nature of the services provided, and the experience of the attorneys."). The Third Circuit has held that "[t]he lodestar is strongly presumed to yield a reasonable fee." *Washington v. Phila. Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996). However, the Third Circuit has explained that when comparing the lodestar to other methods of calculating a fee, "the lodestar cross-check calculation need not entail 'mathematical precision' or 'bean-counting'" *In re AT&T*, 455 F.3d at 169 n.6 (quoting *Rite Aid*, 396 F.3d at 306).

Counsel devoted considerable time and effort to the prosecution and settlement of this action on terms very favorable to the Class. Since this case was originally filed in May 2007, Class Counsel collectively spent in excess of 3,600 hours in performance of their services on behalf of the Class and have yet to be paid anything for their efforts. *See* Compendium attached to Greenberg Dec. The cumulative lodestar at current hourly rates for the services performed by all Class Counsel is $2,048,949.25. *Id.* Based upon Class Counsel's desire to maximize the actual net recovery for the Class, the fee of $950,000.00 (after subtraction of expenses of $25,127.15), negotiated at arms' length represents a particularly modest fee since there is a negative multiplier. *See In re AT&T Corp.*, 455 F.3d at 164 (explaining that to calculate the lodestar multiplier the District Court divides the proposed fee award by the lodestar calculation).

This modest fee stands in stark contrast to the significant risk undertaken by Class Counsel and the considerable time and resources devoted to this case despite that risk.

The contingency risk in this case was unusually high as it involved complicated technical subject matter, and Samsung sought to vigorously defend both the merits of Plaintiffs' claims and eventually defeat certification of any class. Extensive discovery was undertaken in this case--before the settlement was reached--concerning the existence of the Shadow itself as well as its commonality to all of the Televisions. Samsung has unlimited resources to defend the action as well as extensive technical and engineering experts at its disposal to testify in this case. As such, Class Counsel faced an uphill battle in pursuing the litigation further against tenacious and well-funded Defendants with considerable expertise concerning the factual issues in this case. While Plaintiffs believe they would have been able to certify a class and prove the truth of their claims at trial, there was a serious risk of little or no recovery, and as a result, no fees. Despite these obstacles, Class Counsel invested significant resources in pursuing this litigation. The considerable risk undertaken by Class Counsel and the resources devoted to this case despite that risk justify a multiple of the lodestar—and not the discount on Counsel's hourly rates that is being sought herein.[6] Further, the fact that no Class member objected to the requested fee serves as validation of the fee sought herein. *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Company)*, 513 F. Supp. 2d 322, 341 (E.D. Pa. 2007).

When Class Counsel undertook this action it was with the knowledge that they might have to spend untold hours of hard work, against a well-heeled and resourceful adversary, without assurance of getting paid for their efforts and resources expended. Indeed, there are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for

---

[6] Of course, the negotiated fee is below the lodestar multipliers typically awarded. *Prudential*, 148 F.3d at 341 (multiples "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied" (quoting 3 Newberg § 14.03 at 14-5)).

class plaintiffs against accounting firm and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning jury verdict for plaintiff in securities fraud class action in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing substantial jury verdict for class after j.n.o.v. was denied and dismissing case after 11 years of litigation). Accordingly, the contingent nature of the fee and the risk of litigation in this case should be given substantial weight by the Court in passing upon the instant motion for fees and expenses.

### D.      The Percentage Method.

The fee is also reasonable under the percentage of the benefit analysis, which compares the fee to the results achieved. The warranty extension alone is worth several hundred dollars to each of the over one million class members. The common benefit is thus huge.

Courts have long recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs based on the common benefit achieved.[7] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than his client is entitled to a reasonable attorney's fee from the fund as a whole."). The Third Circuit has held that a fee application in a common fund scenario should be evaluated in terms of

---

[7] The Court's role in this case, however, is somewhat different than in the traditional "common fund" case where the awarded fee is subtracted from the total amount of money and/or benefits made available to the class, thereby diminishing such benefits. Here, Defendants agreed to pay the fee over and above the Class recovery. There is no reason for this Court to second-guess whether Defendants, a sophisticated multi-national conglomerate with experienced and competent counsel, may have underpaid or overpaid in negotiating its maximum exposure to fees and expenses. *See EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1334 (E.D. Mo. 1995) ("When, as in the instant case, there is no evidence of fraud, collusion, overreaching or unreasonableness by the parties, 'a court should not intrude upon the settlement in question, particularly where it has been achieved through extended negotiations, carefully selected criteria, and complex calculations.'") (citation omitted). Indeed, if courts were to routinely cut the amount of an agreed-upon fee, plaintiff's counsel's incentive to agree to a fee amount would be completely chilled; future plaintiff's counsel would have little incentive to enter into an agreement with defendants which would then merely serve as a ceiling, with the court free to cut (but not raise) the negotiated amount.

243433 v1                                          25

the following factors:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000).  However, "[t]he Court need not apply these fee award factors in a formulaic way" (*McGee*, 2009 WL 539893, at *13) and one court recently found where, as here, counsel sought a negative multiple on their lodestar and where no objections were filed relating to the fees requested, "The Court does not see any need for extensive *Gunter* analysis given these strong indications that the fee sought is reasonable and fair." *Careccio v. BMW of North America LLC*, Case No. 08-26192010, 2010 WL 1752347, at *7 (D.N.J. Apr. 29, 2010).

### 1. The size of the fund created and the number of persons benefited

While the cash value of the benefit conveyed under certain provisions of the Settlement is difficult to quantify with precision, the value of the repair, taken alone, is worth no less than several hundred dollars for each of the more than 1,450,000 members of the Class, and the negotiated fee is but a small percentage of that amount.  Of course, this conservative analysis does not even take into account the value of the cash refunds and other enhancements provided by the Settlement, the value of which are also substantial, but less readily quantifiable.

The range of fee awards generally in class actions is "19%-45%" while the "benchmark" in this Circuit is 25%.  *Varacallo*, 226 F.R.D. at 254.  As discussed above, Class Counsel have negotiated, and seek approval of attorneys' fees, after accounting for expenses, in the amount of $950,000, which at 25%, would require the settlement to be worth at least $3.8 million, a sum that the settlement value plainly far exceeds.  As found by Judge Linares in the similar *LG* Settlement, while the value of the settlement might be difficult to calculate with precision, the fee here is well within the acceptable range even if the value is far less than that asserted. *See In*

*re LG/Zenith*, 2009 WL 455513, at *8. Thus the fee request is well justified, particularly in light of the contingent nature of the fee, and the excellent result achieved.

### 2. Absence of Substantial Objections to Settlement and/or Fees Requested by Counsel

As set forth, *supra*, there were very few objections filed in this matter and none of those were directed at the fees sought by Class Counsel.

### 3. The Skill and Efficiency of the Attorneys Involved.

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees under a lodestar/multiplier analysis. *See, e.g., Hensley*, 461 U.S. at 436 ("[M]ost critical factor is the degree of success obtained"). Further, this recovery was in no way aided by any governmental action. (Greenberg Dec. at ¶27.) "This is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992). Finally, the quality of the representation of Class Counsel is best evidenced by the excellent recovery obtained for the Class in which all members of the Class will get immediate and complete relief from a formidable opposition, which is additional confirmation of the quality of their representation in this matter. *See, e.g., In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

### 4. The Complexity, Magnitude and Risks of the Action and the Contingent Nature of the Fee

From the commencement of this litigation, Class Counsel have been paid nothing for their substantial efforts. (Greenberg Dec. at ¶28.) The significant outlay of cash and personnel resources by Class Counsel has been completely at risk. Payment for their services was wholly dependent on obtaining some recovery for the Class. As discussed above, there was a significant possibility that Counsel would recover nothing more for their substantial efforts which is a highly relevant factor in determining the fee to be awarded. *Varacallo*, 226 F.R.D. at 254. As

the *Grinnell* court stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

495 F.2d at 470-71; *see also In re Warner Communications Secur. Litig.*, 618 F. Supp. 735, 748-749 (S.D.N.Y. 1985) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award."). This Court's analysis of this factor in *McGee* is equally as apt here: "Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement. Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval." *McGee*, 2009 WL 539893, at *15.

### 5.    Fee Awards in Similar Cases

"The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees." *McGee*, 2009 WL 539893, at *15. Here, that task is a simple one because Judge Linares, in a very similar case, awarded class counsel a multiple of 1.55. (*LG* Order at 16.) So too, many of the same Class Counsel here were awarded a multiple of 1.21 in a similar case against Sony relating to its televisions. (*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173, 2008 WL 1956267, at *16 (S.D.N.Y. May 1, 2008).) Certainly, those awards demonstrate that the fees sought herein are reasonable.

### E.    The Requested Fee Award Is Reasonable

The reasonableness of the requested fee under either a percentage or lodestar approach is confirmed by a review of the percentages and the multipliers awarded in other similar class action litigation, the complexity, magnitude and risks of this litigation, and the contingent nature of the fee, the result achieved for the Class given the status of the Action, the quality of the representation by Class Counsel, as well as public policy. Accordingly, Plaintiffs' counsel submit that the fee request is fair and reasonable and should be awarded by the Court.

243433 v1

V.    **Plaintiffs' Counsel Are Entitled to Be Reimbursed for their Reasonable Litigation Expenses**

The Third Circuit has expressly approved of the awarding of costs -- in addition to fees – to counsel who obtain a recovery for the class. *In re AT&T Corp.*, 455 F.3d at 169; *see also Oh v. AT&T Corp.,* 225 F.R.D. 142, 154 (D.N.J. 2004). As described in detail in the Compendium, the expenses of $25,127.15 incurred were reasonable and necessary to achieve the significant result reached in this Action. Furthermore, no objection to this request has been received.

VI.   **The Incentive Awards Are Reasonable and Should Be Approved**

Under the Settlement, each Class representative will receive as an incentive award for assisting in the litigation and participating in discovery, a current model 50 inch LCD or Plasma television of a model to be chosen by Samsung. It is estimated that such televisions will have a retail value of approximately $1,500 or less. Such an award is intended to recognize the critical role the Class representatives played in this case and the time and effort undertaken (through their responding to interrogatories and producing documents, sitting for deposition and consulting with counsel about the litigation (Greenberg Dec. at ¶¶18-19) in helping secure the exceptional result obtained on behalf of the Class. *Bradburn*, 513 F. Supp. 2d at 343 (observing "[i]t is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class."). Indeed, "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Bradburn*, 513 F.Supp.2d at 342-43 (D.Pa. 2007) (approving incentive award of $75,000); *see also, McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) (approving $60,000 incentive award to each of the Class Representatives). As the foregoing factors support the participation, service and risk payment requested here, the incentive awards should be approved.

## CONCLUSION

It is respectfully submitted that the Settlement provides for a fair, reasonable and adequate resolution of this litigation and should be finally approved by this Court. Accordingly, the Settlement Class should be certified and final approval should be given to the Settlement. In addition, it is respectfully submitted that Class Counsel's application for an award of fees and expenses in the amount of $950,000.00 to be paid by Samsung is fair and reasonable and should be approved, as should the incentive awards sought.

Dated: August 2, 2010

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Bruce D. Greenberg*
Bruce D. Greenberg
Mayra V. Tarantino
Two Gateway Center, 12th Floor
Newark, NJ 07102
(973) 623-3000

**LAX LLP**
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, NY 10168
(212) 818-9150

**LANGE & KONCIUS, LLP**
Joseph J.M. Lange
Jeffrey A. Koncius
222 North Sepulveda Blvd., Suite 2000
El Segundo, CA 90245
(310) 414-1880

**THE SOBELSOHN LAW FIRM**
Daniel E. Sobelsohn
16027 Ventura Boulevard, Suite 608
Encino, CA 91436
(818) 688-4211

**BARON & HERSKOWITZ**
Jon Herskowitz
9100 S. Dadeland Boulevard, Suite 1000
Miami, FL 33156
(305) 670-0101

*Plaintiffs' Counsel Executive Committee*

243433 v1

30